**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4316**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

BLAIN SALMONS, JR.,

        Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Thomas E. Johnston, Chief District Judge. (2:15-cr-00171-1)

Argued: September 12, 2017                   Decided: October 12, 2017

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED:** Lex A. Coleman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Timothy Doyle Boggess, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, Research & Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Carol A. Casto, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

WILKINSON, Circuit Judge:

Is the West Virginia crime of aggravated robbery, W. Va. Code § 61-2-12 (1961), a predicate crime of violence under the force clause of U.S.S.G. § 4B1.2? The district court held that it was categorically violent, and we affirm its judgment.

I

Blain Salmons Jr. pleaded guilty to being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). This crime carries a base offense level of 14, *see* U.S.S.G. § 2K2.1(a)(6)(A), unless the defendant has a prior conviction for a crime of violence, in which case the base offense level rises to 20. *See* U.S.S.G. § 2K2.1(a)(4)(A). The term "crime of violence" is defined with reference to U.S.S.G. § 4B1.2(a). *See* U.S.S.G. § 2k2.1 cmt. n.1.

Salmons had previously been convicted of West Virginia aggravated robbery. At the time of Salmons' conviction, aggravated robbery was defined as the successful or attempted commission of a "robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever." W. Va. Code § 61-2-12 (1961).[1]

At sentencing, the district court found that Salmons had been convicted of a crime of violence on the basis of his prior conviction for West Virginia aggravated robbery. With this prior conviction, the district court determined that Salmons' advisory Guideline

---

[1] The statute was amended into its present form in 2000. W. Va. Code § 61-2-12 (2000).

range was 30-37 months. Had the district court found that Salmons' prior conviction did not qualify as a crime of violence, his advisory range would have been 15-21 months.

In the course of sentencing, the district court considered Salmons' contrition and cooperation. However, the district court observed that "some prior felonies present more risk than others" and noted that Salmons' "criminal history suggests that we need to be concerned about protecting the public, but the mitigating circumstances in this case suggest that a significant variance is needed to arrive at a just punishment." J.A. 62-63. After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a sentence of twelve months and one day. This sentence represented a downward variance of eighteen months from the district court's advisory Guideline range and a downward variance of three months from the range Salmons thought appropriate. Had the district court agreed with Salmons' contention that West Virginia aggravated robbery was not a crime of violence, Salmons says that he would have asked for an even lighter sentence.

II

We review de novo whether a prior conviction qualifies as a crime of violence under the United States Sentencing Guidelines (U.S.S.G.). *See United States v. Llamas,* 599 F.3d 381, 387 (4th Cir. 2010). In doing so, we apply the familiar categorical approach. *See United States v. Baxter*, 642 F.3d 475, 476 (4th Cir. 2011). To qualify as a crime of violence under the force clause, a predicate offense must have as an element the "use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990).

3

We accordingly identify the elements of Salmons' predicate offense and determine whether they necessarily fit within the definition set out in U.S.S.G. § 4B1.2(a)(1). A predicate offense qualifies as a crime of violence if all of the conduct criminalized by the statute—"including the most innocent conduct"—matches or is narrower than the Guidelines' definition of "crime of violence." *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008).

If, however, the predicate offense can be committed without satisfying the definition of "crime of violence," then it is overbroad and not a categorical match. *See Taylor*, 495 U.S. at 602. Of course, there must be a "realistic probability, not a theoretical possibility," that a state would actually punish that minimum conduct. *See United States v. Duenas-Alvarez*, 549 U.S. 183, 193 (2013).

Congress has repeatedly made clear that it intends to enhance penalties for violent, and thus dangerous, recidivists. The text of the career offender directive, for instance, instructs the Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for defendants with violent criminal histories. 28 U.S.C. 994(h); *see also* S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983) ("[T]he guidelines development process can assure consistent and rational implementation for the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers.").

The Guideline provisions in this case serve this congressional goal by distinguishing between felons with violent and nonviolent criminal histories. Section 4B1.2(a), as noted, defines the term "crime of violence," in pertinent part, as "any crime

4

punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The advisory Guideline range for felons caught, as here, in possession of a firearm thus rises for those who have a past conviction that meets the crime of violence definition. *See* U.S.S.G. § 2K2.1(a)(4)(A).

The Supreme Court has interpreted Section 4B1.2(a) in a manner that respects Congress's desire to punish adequately the most dangerous recidivists. It has, for example, interpreted "physical force" in this context to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *United States v. Johnson*, 559 U.S. 133, 140 (2010) (emphasis in original). And, in excluding "the slightest offensive touching" from the Guidelines' definition of "crime of violence," *id*. at 1270, the Court has ensured that Section 4B1.2(a) covers only what are truly violent predicate offenses. *Id*.

We think it clear that West Virginia aggravated robbery qualifies as a crime of violence under the aforementioned 4B1.2(a)(1) definition. The text points toward this conclusion. At the time of Salmons' conviction, aggravated robbery was defined as the successful or attempted commission of a "robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever." W. Va. Code § 61-2-12 (1961).

Our decisions in *United States v. Doctor*, 842 F.3d 306 (2016), and *United States v. McNeal*, 818 F.3d 141 (2016), also forecast the outcome in the instant case. In *Doctor*,

5

we held that South Carolina's strong arm robbery statute is a crime of violence. *See Doctor*, 842 F.3d at 307 (2016). In *McNeal*, we found that federal armed bank robbery also meets this definition. *See McNeal*, 818 F.3d at 142 (2016). Both *Doctor* and *McNeal* considered statutes that criminalize a taking by intimidation or by the threat of criminal violence. In both of those cases, the fact that the predicate offense required the actual, threatened, or attempted use of physical force led us to conclude that the offense was categorically violent. *See Doctor*, 842 F.3d at 312 ("In sum, South Carolina has defined its common law robbery offense, whether committed by means of violence or intimidation, to necessarily include as an element the 'use, attempted use, or threatened use of physical force against the person of another.'"); and *McNeal*, 818 F.3d at 157 ("In sum, we are satisfied that bank robbery under 18 U.S.C. § 2113(a) is a 'crime of violence' within the meaning of the force clause of 18 U.S.C. § 924(c)(3), because it 'has as an element the use, attempted use, or threatened use of physical force'—specifically, the taking or attempted taking of property 'by force and violence, or by intimidation.'").

The same is true of aggravated robbery. There is nothing distinctive about West Virginia aggravated robbery that would suggest a different result. Here the statutory means by which aggravated robbery is committed are violent. They include "strangulation or suffocation," as well as the threat or use of "firearms" or "other deadly weapons." *See* W. Va. Code § 61-2-12 (1961). These are brutal acts. They entail actual, attempted, or threatened use of violence against another person. *See State v. Phillips*, 199 W. Va. 507, 511 (1997); *see also* U.S.S.G. § 4B1.2(a)(1). Simple property damage does not suffice. Mapping onto the classic "crime of violence" definition in the force clause of

6

the Guidelines, the West Virginia statute describes a taking by physical force or by the threat or attempt of physical force.

The violent nature of West Virginia aggravated robbery is underscored by the fact that West Virginia distinguishes between ordinary robbery and aggravated robbery. The West Virginia Supreme Court of Appeals has explained that "[b]y dividing robbery into these two categories, our legislature joined a number of other legislatures in recognizing a greater culpability and more severe punishment for a robbery committed by violent means than for a robbery committed by nonviolent means." *State v. Harless*, 168 W. Va. 707, 710 (1981). It went on to explain that "[t]he purpose of our robbery statute is to identify those means of committing robbery which are more aggravated in the sense that they are likely to produce bodily injury to the victim." *Id.* Thus, as the West Virginia high court has explained, the state legislature deliberately separated robbery from aggravated robbery in order to expressly delineate the more violent forms of the offense.

Salmons relies on two textual arguments to the effect that West Virginia aggravated robbery can be committed with de minimis force. First, Salmons argues that the offense can be committed by "striking" or "beating." We are unpersuaded that these are nonviolent means as used in the statute. The text of the statute does not refer to battery or to any other crime that can be committed by nominal touching. *See* W. Va. Code § 61-2-12 (1961). "Striking" is a use of force beyond mere touching or incidental physical contact. *See State v. Ross*, 184 W. Va. 579, 582 (1990). In fact, the West Virginia Supreme Court of Appeals has repeatedly emphasized that the "statutory acts

7

which constitute aggravated robbery . . . involve actual violence to the person." *Harless*, 168 W. Va. at 711 (1981).

Second, Salmons argues that the statute's use of the phrase "instrumentality whatsoever" in the definition of aggravated robbery indicates that the crime can be committed by some means or level of force that does not cross the threshold of violence. Yet Salmons points to no West Virginia case of aggravated robbery that involves the nonviolent use of an instrumentality. If West Virginia had intended "instrumentality" to include an instrument of nonviolent force, then there would be no need to distinguish between the two classes of robbery. The aggravated robbery statute as a whole vividly describes a pattern of aggressive physical conduct directed at another person. It would strain the text of the statute to rip the word "instrumentality" out of context. The word is part of a series that includes the "presenting of firearms or other deadly weapons." *See* W. Va. Code § 61-2-12 (1961). It should not be read in isolation to encompass any object that could conceivably or hypothetically be used in the commission of a robbery. Within the entirety of the statutory framework, the use of an instrumentality to commit robbery denotes something more than an innocuous instrument.

Of course, if West Virginia robbery could be committed without violence, then it would not be a crime of violence under Section 4B1.2(a)'s force clause. But that would require that the predicate offense had actually, rather than hypothetically, been committed in such a way. As the Supreme Court pointed out in *Gonzales v. Duenas-Alvarez*, "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's

8

language." 549 U.S. 183, 193 (2007). There must be, as we have noted, "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.*

*United States v. Gardner* shows the kind of inquiry necessary to find that a predicate offense is overbroad for purposes of the force clause. 823 F.3d 793 (4th Cir. 2016). In *Gardner*, we observed that North Carolina common law robbery can be committed with de minimis force. Unlike West Virginia, North Carolina has actually sustained convictions in which the offense was committed without violence. *See id.* at 803-04 (citing *State v. Chance*, 191 N.C. App. 252 (N.C. Ct. App. June 17, 2008) (unpublished) (sustaining a North Carolina robbery conviction in which the defendant pushed the victim's hand off a carton of cigarettes); and *State v. Eldridge*, 197 N.C. App. 402 (N.C. Ct. App. June 2, 2009) (unpublished) (sustaining a North Carolina robbery conviction in which the defendant used minimal force to shove the shoulder of a store clerk)). In addition, the North Carolina Supreme Court has expressly stated that "the degree of force used [in common law robbery] is immaterial, so long as it is sufficient to compel the victim to part with his property." *Gardner*, 823 F.3d at 803 (quoting *State v. Sawyer*, 29 S.E.2d 34, 37 (1944)).

*Gardner* therefore does not give litigants a green light to conjure up fanciful fact patterns in an attempt to find some nonviolent manner in which a crime can be committed. Rather, it establishes that litigants must point to the statutory text or to actual cases in order to demonstrate that a conviction for a seemingly violent state crime could in fact be sustained for nonviolent conduct.

9

At sentencing, the district court observed that this "area of law" has become "unduly complicated." J.A. 44. The district court further noted that it would "strain credulity" and "be a surprise to anybody" if West Virginia aggravated robbery were found not to be a crime of violence. *Id*. We see no need to belabor discussion of a district court decision so soundly anchored in both law and common sense.

III

The judgment is accordingly

*AFFIRMED.*