DUNCAN, Circuit Judge:
 

 Appellant Taison McCollum pleaded guilty in federal court to possession of a firearm by a convicted felon in violation of
 
 18 U.S.C. § 922
 
 (g). At his sentencing, the district court applied a sentencing enhancement under § 2K2.1(a)(4)(A) of the Sentencing Guidelines based on McCollum's prior conviction under
 
 18 U.S.C. § 1959
 
 (a)(5) for conspiracy to commit murder in aid of racketeering. McCollum argues that the district court erred because conspiracy under § 1959(a)(5) does not require an overt act and is therefore broader than generic conspiracy. As we explain below, we are constrained by the Guidelines text and precedent to agree. The dissent, on the other hand, achieves the result it prefers by overlooking inconvenient Supreme Court and circuit precedent interpreting the Guidelines language at issue.
 
 [1]
 
 As we are reluctant to do so, we vacate McCollum's sentence and remand for resentencing.
 

 I.
 

 McCollum pleaded guilty in the Western District of North Carolina to possession of a firearm by a convicted felon in violation of
 
 18 U.S.C. § 922
 
 (g). The presentence investigation report asserted that McCollum had two prior convictions that qualified as crimes of violence under § 2K2.1, the Guidelines provision that establishes the base offense level for a felon in possession of a firearm: a New Jersey conviction for aggravated manslaughter, and a conviction under
 
 18 U.S.C. § 1959
 
 (a)(5) for conspiracy to commit murder in aid of racketeering. These two convictions supported an enhancement that increased McCollum's base offense level from fourteen to twenty-four. The district court sustained McCollum's objection to classification of his New Jersey conviction as a crime of violence but held that McCollum's § 1959(a)(5) conviction was properly classified as such. Accordingly, the district court concluded McCollum had one prior conviction that qualified as a crime of violence under § 2K2.1 and that McCollum's base offense level was twenty.
 

 II.
 

 McCollum argues that his enhanced sentence is unlawful because conspiracy to commit murder in aid of racketeering is not a "crime of violence" since it does not require an overt act, while conspiracy under the Guidelines does.
 

 We review de novo whether a prior conviction qualifies as a crime of violence under the Guidelines.
 
 United States v. Salmons
 
 ,
 
 873 F.3d 446
 
 , 448 (4th Cir. 2017). We conclude that § 1959(a)(5) is not categorically a crime of violence because conspiracy under that provision is, in fact, broader than generic conspiracy, and precedent directs that we consider the inchoate crime of conspiracy and its object independently. We therefore remand for resentencing.
 
 [2]
 

 A.
 

 Under § 2K2.1 of the Guidelines, the base offense level for a § 922(g) conviction is twenty if the defendant has a prior "felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The felon-in-possession Guideline defines a "crime of violence" via cross-reference "to the career-offender guideline, U.S.S.G. § 4B1.2."
 
 United States v. Shell
 
 ,
 
 789 F.3d 335
 
 , 340 (4th Cir. 2015) ; U.S.S.G. § 2K2.1 cmt. n.1. Accordingly, for purposes of the felon-in-possession Guideline, a crime of violence includes "any offense under federal or state law" that:
 

 (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
 

 (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in
 
 26 U.S.C. § 5845
 
 (a) or explosive material as defined in
 
 18 U.S.C. § 841
 
 (c).
 

 U.S.S.G. § 4B1.2(a). Further, a "crime of violence" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."
 

 Id.
 

 cmt. n.1.
 

 Courts generally follow a well-established procedure to determine whether a defendant's prior conviction qualifies as an enumerated crime of violence under the Guidelines. A defendant may not receive an enhanced sentence merely because the label attached to his crime of conviction is listed in the enumerated offense clause. Instead, an enhanced sentence is lawful only if the prior conviction necessarily establishes that the defendant "has been found guilty of all the elements" of the enumerated offense.
 
 See
 

 Taylor v. United States
 
 ,
 
 495 U.S. 575
 
 , 599,
 
 110 S.Ct. 2143
 
 ,
 
 109 L.Ed.2d 607
 
 (1990).
 

 In
 
 Taylor
 
 , the Supreme Court instructed that, with regard to the undefined enumerated offenses, courts must look to the "generic, contemporary meaning" of the crime, which will typically correspond to the "sense in which the term is now used in the criminal code of most states,"
 

 id.
 

 at 598
 
 ,
 
 110 S.Ct. 2143
 
 , rather than the term's common law meaning,
 
 see
 

 id.
 

 at 594
 
 ,
 
 110 S.Ct. 2143
 
 .
 
 [3]
 

 Taylor
 
 instructed that we apply this categorical approach to ensure that the elements of the crime of conviction are no broader than those of the generic enumerated offense.
 
 See
 

 495 U.S. at 602
 
 ,
 
 110 S.Ct. 2143
 
 .
 
 Taylor
 
 's categorical approach "serves as the cornerstone of our analysis [of] whether a prior offense qualifies as a 'crime of violence' under Section 4B1.2(a)."
 
 Carthorne
 
 , 726 F.3d at 511. "The point of the categorical inquiry is not to determine whether the defendant's conduct
 
 could
 
 support a conviction for a crime of violence, but to determine whether the defendant was
 
 in fact convicted
 
 of a crime that qualifies as a crime of violence."
 
 United States v. Cabrera-Umanzor
 
 ,
 
 728 F.3d 347
 
 , 350 (4th Cir. 2013).
 

 When evaluating a defendant's prior conviction for an inchoate offense listed in the commentary to § 4B1.2(a), "two sets
 of elements are at issue: the elements of [the inchoate crime]
 
 and
 
 the elements of the underlying ... offense."
 
 United States v. Dozier
 
 ,
 
 848 F.3d 180
 
 , 185-86 (4th Cir. 2017).
 
 [4]
 
 Both the inchoate crime and the underlying offense are subject to
 
 Taylor
 
 's categorical approach. An enhanced sentence may follow a conviction for an inchoate crime only if the defendant's conviction necessarily establishes that he was found guilty of a crime whose elements encompass both the generic inchoate crime and the generic underlying crime.
 

 Id.
 

 McCollum argues that § 1959(a)(5) does not support an enhanced sentence because it does not require an overt act, while generic conspiracy does. The government disagrees. It argues as a threshold matter that we should not employ the categorical approach to evaluate a predicate
 
 federal
 
 crime because we have never previously done so. Alternatively, the government continues, even if the categorical approach could be applied to some predicate federal crimes, it should not be applied to § 1959(a)(5) because it would be unreasonable to believe the Commission intended to exclude obviously violent crimes like conspiracies to commit murder in aid of racketeering from its definition of "crime of violence." Moreover, the government contends that generic conspiracy, like common law conspiracy, does not require proof of an overt act. We address these issues below.
 

 B.
 

 We first consider whether the categorical approach applies to federal crimes like conspiracy to commit murder in aid of racketeering. We conclude that it does for two reasons. First, although the Commission has not expressly addressed the issue, the text of § 4B1.2 and other Commission publications strongly suggests that it does. Second, we find no textual or analytical basis in our precedent for distinguishing the treatment of state and federal statutes.
 

 1.
 

 Our starting point is the Guidelines text. The fact that under § 4B1.2(a) a "crime of violence" includes qualifying offenses "under federal or state law," U.S.S.G. § 4B1.2(a), suggests that the two are to be treated similarly. And treating federal predicates similarly necessarily implicates the categorical approach. It is beyond debate that we utilize the
 
 Taylor
 
 construct and the categorical approach to determine whether a prior
 
 state
 
 conviction constitutes a crime of violence.
 
 See, e.g.
 
 ,
 
 Taylor
 
 ,
 
 495 U.S. at 590
 
 ,
 
 110 S.Ct. 2143
 
 ;
 
 Dozier
 
 ,
 
 848 F.3d at
 
 183 ;
 
 Shell
 
 ,
 
 789 F.3d at
 
 338 ;
 
 Carthorne
 
 , 726 F.3d at 512-13.
 
 [5]
 

 Notably, too, the Commission's 2016 Supplement to Appendix C explains that courts employ the categorical approach when applying the enumerated offense clause, and it offers no exception for federal crimes: "The 'enumerated offense clause' identifies specific offenses that
 qualify as crimes of violence. In applying this clause, courts compare the elements of the predicate offense of conviction with the elements of the enumerated offense in its 'generic, contemporary definition.' " U.S.S.G. Supp. to App. C, amend. 798 (2016), at 129. If the Commission had intended for courts to apply the categorical approach only to state crimes, it could easily have made that clear. When the Commission wants to single out federal laws, it can-and does-do so explicitly. For example, the text of § 4B1.2(a)(2) includes as crimes of violence "unlawful possession of a firearm
 
 described in
 
 26 U.S.C. § 5845
 
 (a)
 
 or explosive material
 
 as defined in
 
 18 U.S.C. § 841
 
 (c)
 
 ."
 
 See
 
 U.S.S.G. § 4B1.2(a)(2) (emphases added).
 

 Therefore, we find that the Guidelines text supports the application of
 
 Taylor
 
 's categorical approach to predicate crimes under both state and federal law.
 

 2.
 

 We next consider our precedent. The Supreme Court has not spoken directly to the point, but we are nevertheless bound by
 
 Taylor
 
 's mandate: the categorical approach aims to realize the Commission's purpose that enhanced sentences follow convictions for "crimes having certain specified elements," not crimes having certain names.
 
 See
 

 Taylor
 
 ,
 
 495 U.S. at 588
 
 ,
 
 110 S.Ct. 2143
 
 ;
 
 Dozier
 
 ,
 
 848 F.3d at 185-86
 
 .
 

 The government's argument that we should abandon the categorical approach when considering a prior federal conviction whose label is listed in the Guidelines does not effectuate this mandate. Both state governments and the federal government can write statutes with elements that deviate from those of the corresponding generic crime, and our precedent provides us with no basis for treating the two differently.
 

 Furthermore, the government's position is undermined by the fact that there is no single federal definition of conspiracy that we can assume the Commission intended to adopt when it included conspiracy in the commentary to § 4B1.2. The general federal conspiracy statute requires as an element an overt act.
 
 See
 

 18 U.S.C. § 371
 
 . At least fifteen federal conspiracy provisions for nonviolent crimes require an overt act, while at least ninety-nine do not.
 
 See
 

 United States v. Pascacio-Rodriguez
 
 ,
 
 749 F.3d 353
 
 , 360 (5th Cir. 2014) (surveying statutes). Eight federal conspiracy provisions for violent crimes require an overt act, while forty-three do not.
 

 Id.
 

 at 360-62
 
 (same).
 

 Our review leads us to conclude that the principles expressed by the Supreme Court and in our prior decisions constrain us to apply the categorical approach to McCollum's prior conviction under § 1959(a)(5).
 
 [6]
 
 Our precedent offers no
 basis for analyzing the laws of different sovereigns under different standards.
 
 [7]
 

 C.
 

 Having decided to apply the categorical approach to McCollum's conviction for conspiracy to commit murder in aid of racketeering, we now apply that analysis to determine whether § 1959(a)(5) is a crime of violence under § 4B1.2. As we explain below, because McCollum's conviction under § 1959(a)(5) does not establish that he was actually found guilty of all of the elements of generic conspiracy, we conclude that it is not.
 

 Our analysis under the categorical approach has four parts.
 
 See
 

 Perez-Perez
 
 , 737 F.3d at 952. First, we determine the relevant offense of comparison.
 
 See id.
 
 As we have noted, when determining whether an inchoate crime is a crime of violence, "two sets of elements are at issue: the elements of [the inchoate crime]
 
 and
 
 the elements of the underlying ... offense."
 
 Dozier
 
 ,
 
 848 F.3d at 185
 
 . Since McCollum concedes that murder under § 1959(a)(5) qualifies as a crime of violence,
 
 see
 
 Oral Argument at 5:00-5:30, our analysis turns on the conspiracy component of his conviction.
 
 [8]
 

 Second, we determine the elements of generic conspiracy.
 
 See
 

 Perez-Perez
 
 , 737 F.3d at 952. Because the Guidelines do not define conspiracy, "it should be understood to refer to 'the generic, contemporary meaning' of the crime."
 
 See
 

 Rangel-Castaneda
 
 ,
 
 709 F.3d 373
 
 , 376 (4th Cir. 2013) (quoting
 
 Taylor
 
 ,
 
 495 U.S. at 598
 
 ,
 
 110 S.Ct. 2143
 
 ); U.S.S.G. Supp. to App. C, amend. 798 (2016), at 129. This meaning will typically correspond to the "sense in which the term is now used in the criminal codes of most States."
 
 Taylor
 
 ,
 
 495 U.S. at 598
 
 ,
 
 110 S.Ct. 2143
 
 . In
 
 Rangel-Castaneda
 
 we found
 that the definition adopted by thirty-two states, the federal government, and the District of Columbia established a "broad consensus" sufficient to establish the generic, contemporary definition of a crime.
 
 709 F.3d at 377-78
 
 .
 

 As the parties have noted, the Ninth Circuit recently surveyed conspiracy statutes, and found that thirty-six states, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands define conspiracy to require an overt act.
 
 See
 

 United States v. Garcia-Santana
 
 ,
 
 774 F.3d 528
 
 , 534-35 (9th Cir. 2014). Additionally, the general federal conspiracy statute requires an overt act.
 
 See
 

 18 U.S.C. § 371
 
 . The Ninth Circuit thus held that "an overt act is an element of the generic definition of conspiracy."
 
 Garcia-Santana
 
 ,
 
 774 F.3d at 537
 
 . The Tenth Circuit agreed.
 
 See
 

 Martinez-Cruz
 
 , 836 F.3d at 1314.
 
 [9]
 

 So do we. The fact that more than thirty-two states require an overt act is sufficient to establish the contemporary definition of conspiracy as such.
 
 See
 

 Rangel-Castaneda
 
 ,
 
 709 F.3d at 377-78
 
 (definition adopted by thirty-two states established a "broad consensus").
 
 [10]
 

 The government argues that
 
 Etienne v. Lynch
 
 ,
 
 813 F.3d 135
 
 (4th Cir. 2015), established that generic conspiracy lacks an overt act requirement, but the comparison is inapposite. In
 
 Etienne
 
 , we had to decide whether the definition of conspiracy under the Immigration and Naturalization Act (the "INA") adopted the
 
 common law
 
 definition, which did not require an overt act. We relied on the "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the
 
 common law
 
 definition of statutory terms,"
 

 id.
 

 at 143
 
 (quoting
 
 United States v. Shabani
 
 ,
 
 513 U.S. 10
 
 , 13,
 
 115 S.Ct. 382
 
 ,
 
 130 L.Ed.2d 225
 
 (1994) ) (emphasis added), to conclude that conspiracy under the INA did not require an overt act,
 

 id.
 

 at 145
 
 . Here, by contrast, we interpret Guidelines written by the Sentencing Commission, which requires us to consider a crime's contemporary meaning, not its common law meaning-a distinction that the dissent fails to appreciate.
 
 See
 
 U.S.S.G. Supp. to App. C, amend. 798 (2016), at 129.
 
 Etienne
 
 in fact acknowledges that "the prevailing contemporary meaning of [conspiracy] ... requires proof of an overt act."
 
 813 F.3d at 142
 
 .
 

 The third and fourth parts of our categorical approach analysis are straightforward. Third, we compare the elements of the crime of conviction to those in the generic definition of the enumerated offense.
 
 Perez-Perez
 
 , 737 F.3d at 952. If the elements of the prior crime correspond in substance to those of the enumerated offense, the prior crime is a crime of violence.
 
 Id.
 
 If they do not, the fourth step requires that we decide whether the scope
 of conduct criminalized by the statute "is categorically overbroad when compared to the generic definition of the Guideline crime."
 
 Id.
 
 at 952-53. A statute whose elements criminalize a broader range of conduct than the Guidelines crime "is
 
 not
 
 categorically a crime of violence."
 
 Id.
 
 at 953.
 

 The government does not dispute that conspiracy under § 1959(a)(5) does not require an overt act.
 
 See
 
 Appellee's Br. at 17 (citing
 
 United States v. Orena
 
 ,
 
 32 F.3d 704
 
 , 714 (2d Cir. 1994) ). Because § 1959(a)(5) does not require an overt act, it criminalizes a broader range of conduct than that covered by generic conspiracy. McCollum's § 1959(a)(5) conviction therefore cannot support his enhanced sentence because it is not categorically a crime of violence.
 

 III.
 

 Our analysis is cabined by the text of the Guidelines and by precedent from the Supreme Court and our prior decisions. For the foregoing reasons, the judgment of the district court is
 

 VACATED AND REMANDED
 
 .
 

 Indeed, the dissent acknowledges that the majority's "error" is that it "mechanically applies" the Supreme Court's direction to compare the
 
 elements
 
 of crimes, not their
 
 labels
 
 . Yet it simultaneously refuses to apply the controlling circuit precedent that obliges us to analyze inchoate crimes like conspiracy and their objects separately, and no amount of handwringing, hyperbole, or misdirection can obscure that fact.
 

 McCollum also seeks relief under the alternative theory that the Sentencing Commission cannot use the commentary to expand the definition of "crime of violence" to include conspiracy, since it would be "flatly inconsistent with the text [of § 4B1.2] ... to treat the offense as a crime of violence based solely on the commentary."
 
 See
 
 Reply Br. at 17. Because we hold that McCollum is entitled to resentencing under his first theory, we do not address McCollum's alternative theory.
 

 Taylor
 
 interpreted the Armed Career Criminal Act, but precedents interpreting "crime of violence" under the Guidelines are interchangeable with precedents interpreting "violent felony" under the Armed Career Criminal Act.
 
 United States v. Carthorne
 
 ,
 
 726 F.3d 503
 
 , 511 n.6 (4th Cir. 2013).
 

 Dozier
 
 only considered the inchoate crime of attempt under the commentary to § 4B1.2. But because "aiding and abetting, conspiring, and attempting" crimes of violence are listed together in the same sentence,
 
 Dozier
 
 's holding logically extends to all the inchoate crimes listed in that commentary provision.
 

 We have previously remarked that the categorical approach requires us to "determine the elements of the
 
 state-law offense
 
 in question and compare them to the generic definition."
 
 See, e.g.
 
 ,
 
 United States v. Mungro
 
 ,
 
 754 F.3d 267
 
 , 269 (4th Cir. 2014) (emphasis added);
 
 see also
 

 United States v. Perez-Perez
 
 ,
 
 737 F.3d 950
 
 , 952 (4th Cir. 2013). But these references to a prior
 
 state
 
 conviction are an accident of circumstance: those cases involved state statutes. The parties have identified no case in which we decided-or even assumed-that the analysis could not apply to a federal statute.
 

 The dissent complains that our approach is in conflict with that of three other circuits and warns that our erroneous framework "has serious consequences."
 
 See
 

 infra
 
 at 312. However, other circuits have employed our approach in similar circumstances. For example, the Tenth Circuit recently analyzed whether Hobbs Act robbery is a crime of violence under § 4B1.2(a)(2) and stated that "[o]ur enumerated clause analysis starts with defining Hobbs Act robbery. We next define generic robbery, and then compare the two terms to determine whether the minimum conduct needed to constitute Hobbs Act robbery fits within generic robbery."
 
 United States v. O'Connor
 
 ,
 
 874 F.3d 1147
 
 , 1154-55 (10th Cir. 2017) ;
 
 United States v. Martinez-Cruz
 
 ,
 
 836 F.3d 1305
 
 , 1314 (10th Cir. 2016) (applying categorical approach analysis to determine whether a conviction for possession with intent to distribute marijuana in violation of
 
 21 U.S.C. § 846
 
 was an aggravated felony conviction under the illegal reentry Guideline);
 
 see also
 

 United States v. Moldanado
 
 ,
 
 636 Fed.Appx. 807
 
 , 812 (2d Cir. 2016) (analyzing whether a conviction under
 
 21 U.S.C. § 843
 
 (b) could be a predicate crime under § 4B1.1(a), and concluding that "[b]ecause § 843(b) contains additional elements not included in the definition of 'controlled substance offense[,]' [it] is broader than the generic version laid out in the Guidelines");
 
 but see
 

 United States v. Rivera-Constantino
 
 ,
 
 798 F.3d 900
 
 , 902-03 (9th Cir. 2015) ;
 
 United States v. Sanbria-Bueno
 
 ,
 
 549 Fed.Appx. 434
 
 , 438-39 (6th Cir. 2013) ;
 
 Pascacio-Rodriguez
 
 ,
 
 749 F.3d at 367
 
 . In light of this circuit split, we think the dissent's apocalyptic predictions are exaggerated.
 

 The dissent concludes that the generic-definition framework is unnecessary because the text, structure, and context of the Guideline make it clear that a conspiracy to commit murder is a crime of violence. In doing so, the dissent makes the issue quite clear by simply waving a magic wand and eliding everything with which it disagrees, including
 
 Taylor
 
 's mandate that we consider the elements of a crime, not its label. No clearer example of this tunnel vision can be found than in its failure to apply
 
 Dozier
 
 , a case interpreting the application of the Guidelines to an inchoate crime. That the Supreme Court is moving away from the constraints of
 
 Taylor
 
 may be devoutly to be wished. However, as the dissent seems reluctant to acknowledge, our role is to follow, not lead.
 

 We note that, despite the dissent's protests, the object of the conspiracy does not change the elements of the conspiracy offense. While murder and extortion are enumerated as crimes of violence, the fact that murder may be more violent than extortion does not mean that a conspiracy to commit murder is more likely to constitute a crime of violence than a conspiracy to commit extortion. The Guidelines simply state that " '[c]rime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1. Nothing in the commentary even hints at the possibility that "conspiracy" has a different meaning depending on the object of the conspiracy, and
 
 Dozier
 
 , which interpreted "attempt" under the same provision, analyzed the inchoate crime in isolation from the object crime.
 
 See
 

 848 F.3d at 185
 
 . Thus, we analyze the elements of the conspiracy portion of § 1959(a)(5) without placing a thumb on the scale to account for the fact that the object of the conspiracy is murder.
 

 The Fifth Circuit considered whether the specific conspiracy, that is, conspiracy to commit murder, usually includes an overt act requirement.
 
 See
 

 Pascacio-Rodriguez
 
 ,
 
 749 F.3d at 364
 
 . But our decision in
 
 Dozier
 
 forecloses that result here.
 
 See
 

 Dozier
 
 ,
 
 848 F.3d at 185-86
 
 .
 

 The dissent asserts that our approach, which relies on the conspiracy definition adopted by most states, does not give effect to the intent of the federal Sentencing Commission because most federal conspiracies do not require an overt act. But we presume the Commission is aware of precedent when they write the Guidelines,
 
 see
 

 Miles v. Apex Marine Corp.
 
 ,
 
 498 U.S. 19
 
 , 32,
 
 111 S.Ct. 317
 
 ,
 
 112 L.Ed.2d 275
 
 (1990), and the Supreme Court has instructed that determination of the generic, contemporary definition of crimes requires a consideration of
 
 state
 
 definitions. The dissent points to no indication that the Commission did not have this instruction in mind when it chose to leave "conspiring" undefined. Should the Commission intend another position we hope that it will make that clear.