GREGORY, Chief Judge:
 

 Appellant Tomonta Simmons had his supervised release revoked and was sentenced to 36 months' imprisonment after the district court determined that he committed the North Carolina offense of assault with a deadly weapon on a government official ("AWDWOGO") and four other violations of his release. Simmons's revocation sentence was predicated on the district court's determination that AWDWOGO is a "crime of violence" under the 2016 Sentencing Guidelines and, thus, a Grade A supervised release violation. Because we conclude that AWDWOGO is categorically not a "crime of violence," we find that the district court erred in classifying Simmons's supervised release violations as a Grade A violation. This error anchored Simmons's revocation sentence to an improperly calculated Guidelines range. Therefore, we vacate his revocation sentence and remand for resentencing.
 

 I.
 

 After a high-speed car chase on February 12, 2017 by North Carolina State Highway Patrol Trooper Gary Altman, during which Trooper Altman's police vehicle was sideswiped, Tomonta Simmons and another male were arrested. At the time, Simmons was on supervised release after having served a term of federal imprisonment for conspiracy to commit bank fraud. One of the conditions of his supervised release was that he "not commit another federal, state, or local crime."
 

 After the February 12 incident, the United States Probation Office petitioned the United States District Court for the Western District of North Carolina for revocation of Simmons's supervised release. According to the Probation Office, Simmons had committed various supervised release violations. The most serious violation was the crime of AWDWOGO,
 
 N.C. Gen. Stat. § 14-34.2
 
 , which, Probation argued, Simmons committed while fleeing from Trooper Altman.
 

 At a revocation hearing, Simmons argued that he had been a passenger, not the driver of the car involved in the alleged assault. The district court heard testimony from Trooper Altman and from Simmons's mother and godmother. The court determined that Simmons was in fact driving the vehicle that sideswiped Trooper Altman's vehicle and that the Government had proven each of the alleged supervised release violations.
 

 Of relevance to this appeal, the district court found that Simmons had committed a Grade A supervised release violation when he committed North Carolina AWDWOGO.
 
 See
 
 U.S.S.G. § 7B1.1(a) (classifying supervised release violations into Grades A, B, and C). The district court revoked Simmons's supervised release.
 
 See
 
 U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). With Simmons's criminal history category of V, the applicable Guidelines range for Simmons's revocation sentence was 30 to 36 months.
 
 See
 
 U.S.S.G. § 7B1.4(a)(1) ; U.S.S.G. § 7B1.4(b)(1) ;
 
 18 U.S.C. §§ 1344
 
 , 1349, 3559(a)(2), 3583(e)(3). The district court sentenced Simmons to the top of that range: 36 months' imprisonment.
 

 Simmons's counsel initially filed a brief pursuant to
 
 Anders v. California
 
 ,
 
 386 U.S. 738
 
 ,
 
 87 S.Ct. 1396
 
 ,
 
 18 L.Ed.2d 493
 
 (1967), asserting that he was unable to present a meritorious argument on appeal because none of the evidence submitted during the revocation hearing contradicted Trooper Altman's testimony that Simmons was driving the vehicle at the time of the police chase.
 
 [1]
 
 Fulfilling our obligation under
 
 Anders
 
 , we reviewed the record and identified one nonfrivolous issue on appeal: whether the North Carolina offense of AWDWOGO is a "crime of violence" under the 2016 Sentencing Guidelines such that it constituted a Grade A violation of Simmons's supervised release.
 

 Counsel for Simmons and the Government submitted supplemental briefing on this narrow issue. We now conclude that North Carolina AWDWOGO does not meet the definition of a "crime of violence" for purposes of U.S.S.G. § 7B1.1.
 

 II.
 

 Generally, we review de novo the issue of whether a predicate offense constitutes a "crime of violence" under the Sentencing Guidelines.
 
 United States v. Carthorne
 
 ,
 
 726 F.3d 503
 
 , 509 (4th Cir. 2013) ;
 
 United States v. Jenkins
 
 ,
 
 631 F.3d 680
 
 , 682 (4th Cir. 2011). However, when, as here, a defendant fails to object below to the district court's determination that his predicate offense is a "crime of violence," we review the question for plain error.
 
 Carthorne
 
 ,
 
 726 F.3d at 509
 
 . We will find plain error "if the settled law of the Supreme Court or this circuit establishes that an error has occurred."
 
 United States v. Ramirez-Castillo
 
 ,
 
 748 F.3d 205
 
 , 215 (4th Cir. 2014).
 

 III.
 

 A.
 

 As we alluded to earlier, the Sentencing Guidelines classify supervised release violations into three categories: Grades A, B, and C. U.S.S.G. § 7B1.1(a). A Grade A violation, as relevant here, involves "conduct constituting [ ] a federal, state, or local offense punishable by a term of imprisonment exceeding one year that [ ] is a crime of violence."
 

 Id.
 

 § 7B1.1(a)(1)(A)(i). The Guidelines define "crime of violence" as any federal or state offense punishable by imprisonment for a term exceeding one year that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause) or "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in
 
 26 U.S.C. § 5845
 
 (a) or explosive material as defined in
 
 18 U.S.C. § 841
 
 (c)" (the enumerated offenses clause). U.S.S.G. § 4B1.2(a) ; U.S.S.G. § 7B1.1 cmt. n.2.
 

 To determine whether North Carolina AWDWOGO is a "crime of violence" under the Sentencing Guidelines, we apply the familiar categorical approach. Under this approach, if the offense "can be committed
 without satisfying the definition of 'crime of violence,' then it is overbroad and not a categorical match."
 
 United States v. Salmons
 
 ,
 
 873 F.3d 446
 
 , 448 (4th Cir. 2017) (citing
 
 Taylor v. United States
 
 ,
 
 495 U.S. 575
 
 , 602,
 
 110 S.Ct. 2143
 
 ,
 
 109 L.Ed.2d 607
 
 (1990) ). In considering whether North Carolina AWDWOGO satisfies the definition of "crime of violence," we look only to the elements of AWDWOGO and not the particular facts of Simmons's case.
 
 Mathis v. United States
 
 , --- U.S. ----,
 
 136 S.Ct. 2243
 
 , 2248,
 
 195 L.Ed.2d 604
 
 (2016).
 

 North Carolina's statute provides in relevant part that "any person who commits an assault with a firearm or any other deadly weapon upon an officer or employee of the State or of any political subdivision of the State, ... in the performance of his duties shall be guilty of a Class F felony."
 
 N.C. Gen. Stat. § 14-34.2
 
 . Thus, an individual is guilty of AWDWOGO under North Carolina law if he (1) commits an assault; (2) with a firearm or deadly weapon; (3) on a government official; (4) who is performing a duty of his or her office.
 
 State v. Spellman
 
 ,
 
 167 N.C.App. 374
 
 ,
 
 605 S.E.2d 696
 
 , 701 (2004),
 
 appeal dismissed
 
 ,
 
 359 N.C. 325
 
 ,
 
 611 S.E.2d 845
 
 (2005).
 
 [2]
 

 Simmons does not dispute that the vehicle he drove qualifies as a deadly weapon.
 
 See
 

 State v. Jones
 
 ,
 
 353 N.C. 159
 
 ,
 
 538 S.E.2d 917
 
 , 922 (2000) ("It is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner." (citation omitted)). Rather, Simmons argues that his assault on Trooper Altman cannot be a "crime of violence" under the Guidelines because the offense may be committed with a mens rea lesser than that required by the Guidelines. The Government disagrees and argues that the offense satisfies both the enumerated offenses clause and the force clause. Because Simmons's crime constitutes a Grade A supervised release violation if it satisfies either clause of the "crime of violence" definition, we examine both.
 

 1.
 

 Enumerated Offenses Clause
 

 In applying the categorical approach to determine if an offense falls within the scope of the enumerated offenses clause, we follow a "well-established procedure."
 
 United States v. McCollum
 
 ,
 
 885 F.3d 300
 
 , 304 (4th Cir. 2018). First, we must determine the " 'generic, contemporary meaning' of the crime, which will typically correspond to the 'sense in which the term is now used in the criminal code of most states.' "
 

 Id.
 

 (quoting
 
 Taylor
 
 ,
 
 495 U.S. at 598
 
 ,
 
 110 S.Ct. 2143
 
 ). The generic definition may be gleaned from the Model Penal Code, modern criminal law textbooks, or from a survey of the states' definitions of the crime.
 
 See
 

 Taylor
 
 ,
 
 495 U.S. at
 
 598 n.8,
 
 110 S.Ct. 2143
 
 ;
 
 United States v. Barcenas-Yanez
 
 ,
 
 826 F.3d 752
 
 , 756 (4th Cir. 2016) ;
 
 United States v. Alfaro
 
 ,
 
 835 F.3d 470
 
 , 474 (4th Cir. 2016).
 

 After the generic definition is identified, we must decide whether the elements of the prior conviction, AWDWOGO, categorically match the elements of the generic offense.
 
 United States v. Peterson
 
 ,
 
 629 F.3d 432
 
 , 436 (4th Cir. 2011). We will find a categorical match if the least culpable conduct punished by the state criminal statute falls within the scope of the generic offense.
 
 United States v. King
 
 ,
 
 673 F.3d 274
 
 , 278 (4th Cir. 2012). In conducting this comparison, we "look[ ] only to the statutory
 definitions of the prior offenses, and not to the particular facts underlying those convictions."
 
 Peterson
 
 ,
 
 629 F.3d at 436
 
 (brackets in original) (quoting
 
 Taylor
 
 ,
 
 495 U.S. at 600
 
 ,
 
 110 S.Ct. 2143
 
 ). "We rely on precedents addressing whether [North Carolina AWDWOGO] is a crime of violence under the Guidelines interchangeably with precedents evaluating whether [the] offense constitutes a violent felony under the Armed Career Criminal Act (ACCA)," as "crime of violence" is "defined in a substantively identical manner" under both.
 
 Carthorne
 
 ,
 
 726 F.3d at
 
 511 n.6 (internal quotation marks omitted) (quoting
 
 King
 
 ,
 
 673 F.3d at
 
 279 n.3 ).
 

 a.
 

 Generic Aggravated Assault
 

 The Government argues that North Carolina AWDWOGO categorically matches the generic enumerated offense of aggravated assault.
 
 See
 
 U.S.S.G. § 4B1.2(a)(2). Because the requisite mens rea under the AWDWOGO statute is broader than the enumerated offense, we disagree.
 

 The Model Penal Code provides that a person is guilty of aggravated assault if he
 

 (a) attempts to cause serious bodily injury to another, or causes such injury
 
 purposely, knowingly or recklessly
 
 under circumstances manifesting extreme indifference to the value of human life; or
 

 (b) attempts to cause or
 
 purposely or knowingly
 
 causes bodily injury to another with a deadly weapon.
 

 Model Penal Code § 211.1(2) (emphases added). Thus, under the Model Penal Code's definition, the required mens rea is no less than recklessness manifesting extreme indifference to the value of human life. The Model Penal Code defines recklessness as a "conscious[ ] disregard[ ]" of a "substantial and unjustifiable risk that the material element exists or will result from [the person's] conduct."
 

 Id.
 

 § 2.02(2)(c).
 

 By contrast, as we have recognized in the past, "a substantial majority of U.S. jurisdictions require
 
 more
 
 than extreme indifference recklessness to commit aggravated assault."
 
 Barcenas-Yanez
 
 ,
 
 826 F.3d at 756
 
 (emphasis added) (quoting
 
 United States v. Garcia-Jimenez
 
 ,
 
 807 F.3d 1079
 
 , 1086 (9th Cir. 2015) ). Indeed, we have determined that the "inclusion of a mere reckless state of mind" in a state aggravated assault statute "renders the statute broader than the generic offense."
 

 Id.
 

 (citation omitted). Therefore, if North Carolina AWDWOGO can be committed with a mens rea equal to or less than recklessness, the crime is categorically broader than the generic offense of aggravated assault and cannot be deemed a "crime of violence" under the Sentencing Guidelines.
 
 See
 

 Garcia-Jimenez
 
 ,
 
 807 F.3d at 1086
 
 (noting that Model Penal Code includes a mens rea of recklessness in its definition of aggravated assault but explaining that "the Model Penal Code, while a helpful tool in the categorical analysis, does not dictate the federal generic definition of a crime").
 

 North Carolina's AWDWOGO statute does not define "assault" and is silent on the requisite mens rea. Instead, the element of assault and the requisite mens rea are established by common law.
 
 State v. Mitchell
 
 ,
 
 358 N.C. 63
 
 ,
 
 592 S.E.2d 543
 
 , 547 (2004) ("There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules." (citation omitted));
 
 United States v. Vinson
 
 ,
 
 805 F.3d 120
 
 , 123 (4th Cir. 2015) (noting that there is no statutory definition of assault in North Carolina).
 

 Three state common-law definitions of assault have developed. First, an assault
 is committed by "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm" (the "attempted battery" formulation).
 
 Vinson
 
 ,
 
 805 F.3d at 124
 
 (quoting
 
 State v. Roberts
 
 ,
 
 270 N.C. 655
 
 ,
 
 155 S.E.2d 303
 
 , 305 (1967) ). Second, an assault is committed by "a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed" (the "show of violence" formulation).
 

 Id.
 

 (quoting
 
 Roberts
 
 ,
 
 155 S.E.2d at
 
 305 ). And third, "an assault conviction may be premised on proof of battery" (the "completed battery" formulation).
 

 Id.
 

 (citing
 
 In re K.C.
 
 ,
 
 226 N.C.App. 452
 
 ,
 
 742 S.E.2d 239
 
 , 243 (2013) ).
 

 Under any of the three formulations, an assault conviction will be sustained only if the defendant acts intentionally.
 
 [3]
 

 See
 

 State v. Starr
 
 ,
 
 209 N.C.App. 106
 
 ,
 
 703 S.E.2d 876
 
 , 880 (2011),
 
 aff'd as modified
 
 ,
 
 365 N.C. 314
 
 ,
 
 718 S.E.2d 362
 
 , 366 (2011) ;
 
 State v. Britt
 
 ,
 
 270 N.C. 416
 
 ,
 
 154 S.E.2d 519
 
 , 521 (1967) ;
 
 Vinson
 
 ,
 
 805 F.3d at 125
 
 . This intent to act "can be established through proof of 'culpable negligence.' "
 
 Vinson
 
 ,
 
 805 F.3d at 126
 
 (quoting
 
 Jones
 
 ,
 
 538 S.E.2d at
 
 923 ). "Culpable negligence" is "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others."
 
 Jones
 
 ,
 
 538 S.E.2d at 923
 
 (citation omitted). As we explained in
 
 Peterson
 
 and reiterated in
 
 Vinson
 
 , culpable negligence's "focus on
 
 thoughtless
 
 disregard" renders it "a lesser standard of culpability than recklessness, which requires at least 'a
 
 conscious
 
 disregard of the risk.' "
 
 Vinson
 
 ,
 
 805 F.3d at
 
 126 ;
 
 Peterson
 
 ,
 
 629 F.3d at 437
 
 .
 

 The Government nonetheless argues that "no realistic probability exists that North Carolina would apply [AWDWOGO] to conduct that was not purposeful or knowing." Gov't Br. 13. This is because, the Government explains, the "ordinary or typical case involves purposeful conduct."
 
 Id.
 
 at 8. In making this argument, the Government relies on our unpublished opinion in
 
 United States v. Merchant
 
 ,
 
 731 F. App'x 204
 
 (4th Cir. 2018).
 

 Merchant
 
 , however, is inapposite. There, we found that North Carolina AWDWOGO is a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a) of the 2015 Sentencing Guidelines.
 
 Merchant
 
 ,
 
 731 F. App'x at 208
 
 . Under the residual clause, our inquiry was whether AWDWOGO categorically was "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2015). In making that determination, we applied a two-prong test: (1) AWDWOGO must have posed a "similar risk of physical injury to the crimes enumerated in [U.S.S.G.] § 4B1.2(a)"; and
 (2) AWDWOGO must have been "similar in kind" to the enumerated offense of aggravated assault.
 
 Merchant
 
 ,
 
 731 F. App'x at 206
 
 (citations omitted). The similar-in-risk and similar-in-kind test relies on a review of the "ordinary case."
 
 United States v. Thompson
 
 ,
 
 874 F.3d 412
 
 , 415-16 (4th Cir. 2017),
 
 cert. denied
 
 , --- U.S. ----,
 
 138 S.Ct. 1179
 
 ,
 
 200 L.Ed.2d 325
 
 (2018).
 

 That test does not apply, however, to our analysis under the enumerated offenses and force clauses. Instead, we ask whether "the offense's full range of proscribed conduct, including the
 
 least culpable proscribed conduct
 
 ," falls within the conduct proscribed by the generic enumerated crime.
 
 King
 
 ,
 
 673 F.3d at 278
 
 (emphasis added) (citing
 
 United States v. Chacon
 
 ,
 
 533 F.3d 250
 
 , 254-55 (4th Cir. 2008) );
 
 United States v. Townsend
 
 ,
 
 886 F.3d 441
 
 , 445 (4th Cir. 2018) (evaluating "minimum conduct necessary to obtain a conviction under the statute" in force clause analysis);
 
 Alfaro
 
 ,
 
 835 F.3d at 478-79
 
 (evaluating least culpable conduct in enumerated-offenses-clause analysis).
 
 [4]
 
 The "minimum culpable conduct" test is "significantly different" from the "ordinary case" approach.
 
 Thompson
 
 ,
 
 874 F.3d at
 
 416 n.3. Moreover, the Sentencing Commission eliminated the residual clause-to which the "ordinary case" approach is relevant-when it drafted the 2016 Sentencing Guidelines that apply to Simmons's revocation sentence.
 
 Compare
 
 U.S.S.G. § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2015),
 
 with
 
 U.S.S.G. § 4B1.2(a) (U.S. Sentencing Comm'n 2016).
 

 Consequently, our analysis under the enumerated offenses clause focuses only on whether the least culpable conduct under the North Carolina statute-conduct that would result in a conviction for AWDWOGO-is also proscribed by the generic offense of aggravated assault.
 
 Alfaro
 
 ,
 
 835 F.3d at 478
 
 . We rely on decisions of the Supreme Court of North Carolina, while decisions of the state's intermediate appellate court "constitute the next best indicia of what state law is."
 
 United States v. Gardner
 
 ,
 
 823 F.3d 793
 
 , 803 (4th Cir. 2016) (citation omitted). As discussed, the Supreme Court of North Carolina has made clear that the element of assault can be satisfied with a mens rea of "culpable negligence."
 
 Jones
 
 ,
 
 538 S.E.2d at 923
 
 .
 

 We recognize that in addressing convictions under the AWDWOGO statute, the North Carolina state courts have not made explicit findings that the acts at issue were culpably negligent, rather than something more. Nonetheless, it is plausible that North Carolina would punish culpably negligent conduct under the AWDWOGO statute.
 
 See
 

 Townsend
 
 ,
 
 886 F.3d at 445
 
 ("We look to the minimum conduct necessary to obtain conviction under the statute and assure ourselves that there is a realistic probability ... that a state would actually punish that conduct." (internal quotation marks omitted)). One plausible example of an AWDWOGO prosecution for a culpably negligent act would be a person who strikes a government official with a car.
 
 Cf.
 

 Jones
 
 ,
 
 538 S.E.2d at 923
 
 . The driver could meet the mens rea standard if he drove with thoughtless disregard for the safety of others. Therefore, we are satisfied that the North Carolina AWDWOGO statute punishes conduct that is broader in scope than that punished by generic aggravated assault. It thus fails the enumerated-offenses-clause test for a "crime of violence."
 

 2.
 

 Force Clause
 

 For largely the same reason that North Carolina AWDWOGO fails to satisfy
 the definition of "crime of violence" under the enumerated offenses clause, it also fails to satisfy the definition under the force clause. An offense is a "crime of violence" under the force clause if it has as an element the "use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). As we highlighted in
 
 Vinson
 
 , the Supreme Court has held that " 'negligent or merely accidental conduct' does not constitute a
 
 use
 
 of physical force."
 
 805 F.3d at 125
 
 (quoting
 
 Leocal v. Ashcroft
 
 ,
 
 543 U.S. 1
 
 , 9,
 
 125 S.Ct. 377
 
 ,
 
 160 L.Ed.2d 271
 
 (2004) ). And because the requisite intent for any of the different forms of North Carolina assault can be established through proof of "culpable negligence,"
 
 Jones
 
 ,
 
 538 S.E.2d at 923
 
 , each form of assault "permits conviction for conduct that does not amount to a 'use' of force under
 
 Leocal
 
 ."
 
 Vinson
 
 ,
 
 805 F.3d at
 
 126 ;
 
 see also
 

 Peterson
 
 ,
 
 629 F.3d at 437
 
 .
 

 We reach this conclusion notwithstanding the Supreme Court's decision in
 
 Voisine v. United States
 
 , a decision which postdated our holding in
 
 Vinson
 
 . In
 
 Voisine
 
 -a case which concerned "misdemeanor crimes of domestic violence"-the Supreme Court distinguished between "volitional" and nonvolitional acts, instead of between the traditional categories of mens rea. --- U.S. ----,
 
 136 S.Ct. 2272
 
 , 2278-79,
 
 195 L.Ed.2d 736
 
 (2016).
 
 Voisine
 
 , however, addressed only reckless crimes, whereas AWDWOGO can be committed with culpable negligence-a mens rea of lesser degree than recklessness.
 

 Id.
 

 at 2280
 
 ("Congress's definition of a 'misdemeanor crime of violence' contains no exclusion for convictions based on reckless behavior. A person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally." (brackets in original)). And the Court expressly declined to extend its holding to "crimes of violence."
 

 Id.
 

 at 2280 n.4. Accordingly, we see no reason in light of
 
 Voisine
 
 to alter our conclusion in this case that North Carolina AWDWOGO-a crime that can be committed with culpable negligence-is categorically disqualified as a "crime of violence" under the Sentencing Guidelines.
 
 [5]
 

 B.
 

 Plain Error
 

 The Government argues that, even if the district court erred in finding that AWDWOGO is a crime of violence for purposes of the Sentencing Guidelines, that error was not plain because the law in this area was unsettled at the time Simmons's revocation sentence was imposed. Simmons's sentence was imposed in September 2017. Yet our decision in
 
 Vinson
 
 -holding that the mens rea for any of the three assault formulations under North
 Carolina law includes "culpable negligence" and is categorically broader than the force clause-was issued in November 2015, nearly two years prior to Simmons's sentencing.
 
 805 F.3d at 126
 
 . To be sure, we had not yet determined that this particular assault offense is not a "crime of violence" under the 2016 Sentencing Guidelines. Nonetheless,
 
 Vinson
 
 provided a clear answer to the question that the district court faced: whether the mens rea required to commit North Carolina AWDWOGO was a categorical match to either the mens rea required by the generic offense of aggravated assault or the mens rea required under the force clause. In light of our clear holding in
 
 Vinson
 
 , we find that the district court plainly erred in determining that North Carolina AWDWOGO is a "crime of violence" for purposes of the Sentencing Guidelines.
 

 The district court's error led to the improper calculation of the applicable Guidelines range. Simmons's AWDWOGO offense was the only Grade A supervised release violation found by the district court; the others were Grade B and Grade C violations. Absent the court's error, Simmons's supervised release violations together would have classified as a Grade B violation. U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). Therefore, the district court erred in finding Simmons committed a Grade A violation.
 

 The Guidelines range for a Grade B violation with Simmons's criminal history category of V is 18 to 24 months, lower than the range of 30 to 36 months to which the revocation sentence was anchored. U.S.S.G. § 7B1.4(a). Accordingly, we vacate Simmons's revocation sentence and remand for resentencing.
 
 See
 

 Rosales-Mireles v. United States
 
 , --- U.S. ----,
 
 138 S.Ct. 1897
 
 , 1908,
 
 201 L.Ed.2d 376
 
 (2018) (noting that a guidelines miscalculation "ordinarily" justifies resentencing under the correct guidelines range);
 
 United States v. Abu Ali
 
 ,
 
 528 F.3d 210
 
 , 260 (4th Cir. 2008) ("A sentence based on an improperly calculated guidelines range will be found unreasonable and vacated.").
 

 IV.
 

 For the foregoing reasons, we vacate Simmons's revocation sentence and remand for resentencing.
 

 VACATED AND REMANDED
 

 Anders
 
 instructs that, if appointed counsel deems a criminal appeal to be "wholly frivolous," he or she should so advise the court and request permission to withdraw.
 
 386 U.S. at 744
 
 ,
 
 87 S.Ct. 1396
 
 . Such a request must "be accompanied by a brief referring to anything in the record that might arguably support the appeal."
 

 Id.
 

 The burden then shifts to the court to determine, "after a full examination of all the proceedings," whether an appeal would in fact be "wholly frivolous."
 

 Id.
 

 If the court agrees with counsel, it may grant counsel's request to withdraw.
 

 Id.
 

 If, however, the court determines that there exist nonfrivolous arguments, it must grant the defendant assistance of counsel to argue the appeal.
 

 Id.
 

 A conviction of AWDWOGO is punishable by a prison sentence exceeding one year and thus satisfies the minimum punishment requirement of U.S.S.G. § 4B1.2(a).
 
 N.C. Gen. Stat. § 14-34.2
 
 ; N.C. Gen. Stat. § 15A-1340.17(c).
 

 Whether the various formulations of assault render
 
 N.C. Gen. Stat. § 14-34.2
 
 divisible, such that the modified categorical approach applies, is a question that we have not yet answered.
 
 See
 

 Vinson
 
 ,
 
 805 F.3d at 124-25
 
 (noting various forms of assault under North Carolina law but declining to consider divisibility);
 
 Omargharib v. Holder
 
 ,
 
 775 F.3d 192
 
 , 197 (4th Cir. 2014) (explaining that modified categorical approach applies where the predicate crime "consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not" (internal citation and quotation marks omitted)). However, because the mens rea required by each of the three formulations is the same, and our evaluation of the requisite mens rea is dispositive, we need not decide the divisibility issue here.
 

 The Government has previously acknowledged the difference between the "ordinary case" approach applicable to a residual clause analysis and the "minimum culpable conduct" approach applied to a force clause analysis.
 
 Thompson
 
 ,
 
 874 F.3d at
 
 416 n.3.
 

 The Government asserts that the legislative purpose of the AWDWOGO statute supports its contention that the offense requires a mens rea greater than recklessness. The Government points specifically to a statement by the North Carolina Supreme Court that the purpose of the AWDWOGO statute is "to give greater protection to the law enforcement officer by prescribing a greater punishment for one who
 
 knowingly assaults
 
 such an officer."
 
 State v. Avery
 
 ,
 
 315 N.C. 1
 
 ,
 
 337 S.E.2d 786
 
 , 803 (1985) (emphasis added). According to the Government, this legislative intent demonstrates that no real probability exists that North Carolina would apply AWDWOGO to "unknowing or unintentional conduct." Gov't Br. 10. In
 
 Avery
 
 , though, the question to be answered by the court was whether knowledge that the victim of an assault is a law enforcement officer is an essential element of AWDWOGO.
 
 337 S.E.2d at 803
 
 . The court was not faced with deciding, nor did it speak to, the mens rea required for the assault itself. Because the court remained silent on the mens rea element of the assault, we do not agree that
 
 Avery
 
 supports the proposition that an individual must knowingly commit an assault to be found guilty of AWDWOGO.