**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Shawntanna Lemarus THOMPSON,
Defendant–Appellant.**

No. 15-4685

United States Court of Appeals,
Fourth Circuit.

Argued: September 12, 2017

Decided: October 26, 2017

ARGUED: Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. ON BRIEF: Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Chief Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. John Stuart Bruce, Acting United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

DIANA GRIBBON MOTZ, Circuit Judge:

Shawntanna Lemarus Thompson pled guilty to a drug offense and being a felon in possession of a firearm. The district court increased his sentence, because it found Thompson's previous state conviction for assault inflicting serious bodily injury constituted a "crime of violence" under § 4B1.2 of the United States Sentencing Guidelines. Thompson appeals, challenging only his sentence. Because the residual clause of § 4B1.2 authorizes the increased sentence, we affirm.

I.

In 2015, Thompson pled guilty to possession of marijuana with intent to distribute and being a felon in possession of a firearm. Pursuant to § 4B1.2, the probation officer recommended imposition of an increased sentence because Thompson had previously been convicted of assault inflicting serious bodily injury ("AISBI") in violation of N.C. Gen. Stat. Ann. § 14–32.4. Thompson objected to the designation of AISBI as a crime of violence, but the district court rejected Thompson's conten-

tion. After making various adjustments and granting Thompson's motion for a downward variance, the court imposed an enhanced sentence of 120 months imprisonment and three years of supervised release. Thompson noted a timely appeal, again arguing that his prior conviction for AISBI does not qualify as a crime of violence under § 4B1.2.

We originally heard oral argument in this case on October 27, 2016. At that time, the Supreme Court had granted certiorari in a case that posed the question, *inter alia,* of whether the residual clause of § 4B1.2 was void for vagueness. *See Beckles v. United States,* 616 Fed.Appx. 415 (11th Cir. 2015), *cert. granted,* —— U.S. ——, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016) (Mem.). We held Thompson's appeal in abeyance awaiting the Court's decision. The Supreme Court ultimately held that "[b]ecause they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge." *Beckles v. United States,* —— U.S. ——, 137 S.Ct. 886, 894, 197 L.Ed.2d 145 (2017). We then ordered the parties to rebrief and reargue this case, addressing the applicability of the residual clause of § 4B1.2 in light of *Beckles.*

■ "In assessing whether a sentencing court has properly applied the Guidelines, we review factual findings for clear error and legal conclusions de novo." *United States v. Llamas,* 599 F.3d 381, 387 (4th Cir. 2010). Because this appeal involves a purely legal question—interpretation of the Guidelines—we review de novo.

## II.

The Guidelines, as applicable to this case, define a "crime of violence" as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2 (2015) (emphasis added). The italicized text is colloquially referred to as the "residual clause."[1]

The definition of crime of violence in § 4B1.2 parallels the definition of "violent felony" in the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B). *See James v. United States,* 550 U.S. 192, 206–07, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). Accordingly, courts look to the Supreme Court's ACCA "violent felony" analysis in cases interpreting § 4B1.2's definition of "crime of violence." *See, e.g., United States v. Wray,* 776 F.3d 1182, 1184–85 (10th Cir. 2015); *United States v. Peterson,* 629 F.3d 432, 438 (4th Cir. 2011).

In *James,* the Court considered whether a defendant's prior Florida conviction for attempted burglary constituted a "violent felony" under the ACCA. The Court held it did, explaining that the enumerated offenses preceding the residual clause "provide a baseline against which to measure the degree of risk that a nonenumerated offense must 'otherwise' present in order to qualify" as a "crime of violence." 550 U.S. at 208, 127 S.Ct. 1586. The *James*

---

**1.** The Sentencing Commission revised the career offender guideline, effective August 1, 2016. The new guideline omits the residual clause. SUPPLEMENT TO THE 2015 GUIDELINES MANUAL § 4B1.2(a)(2) (U.S. SENTENCING COMM'N 2016). Thompson, however, was sentenced pursuant to the 2015 guideline quoted above.

Court concluded that because "the ordinary case" of attempted burglary posed the same "degree of risk" as the enumerated offenses, *i.e.*, a "serious potential risk of injury to another," the crime qualified as a "violent felony." *Id.* at 208–09, 127 S.Ct. 1586.

A year later, in *Begay v. United States*, the Court considered whether New Mexico felony convictions for driving under the influence ("DUI") constituted violent felonies under the ACCA residual clause. 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). While acknowledging that drunk driving poses a "serious potential risk of physical injury to another," the Court nonetheless concluded that the DUI offenses did not qualify as "violent felonies." *Id.* at 141, 147–48, 128 S.Ct. 1581. The Court reasoned that the structure of the ACCA indicates Congress's intent to cover only crimes that are *"similar"* to the enumerated offenses, "rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 142, 128 S.Ct. 1581. Moreover, the Court concluded that the ACCA residual clause applies only to those offenses "roughly similar, in kind as well as in degree of risk posed" to the enumerated offenses. *Id.* at 143, 128 S.Ct. 1581. *Begay* thus expanded the inquiry as to whether a crime falls within a residual clause—requiring a sentencing court to assess *both* the degree of risk typically posed by the crime *and* whether the crime involves the same kind of "purposeful, violent, and aggressive conduct" as the enumerated offenses. *Id.*

In *United States v. Martin*, 753 F.3d 485 (4th Cir. 2014), we applied *James* and *Begay* to hold that a defendant's prior Maryland conviction for fourth-degree burglary did not constitute a crime of violence under the residual clause in § 4B2.1. We reasoned that even though the burglary crime posed the same "degree of risk" as the enumerated offenses, it was not "similar in kind" to them. *Id.* at 490–94. This was so, because unlike the "purposeful, violent, and aggressive" enumerated offenses, fourth-degree burglary under Maryland law could be committed by negligent conduct. *Id.* at 493.

One year after we issued our opinion in *Martin*, the Supreme Court decided *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). In explaining why the residual clause in the ACCA was unconstitutionally vague, the Court reviewed the line of residual clause cases that had set forth how a sentencing court should determine if a predicate offense constitutes a crime of violence warranting an increased sentence.[2]

The parties draw very different conclusions from the discussion of the residual clause in *Johnson*. The Government argues that *Johnson* overrules the "portion of *Martin* that ... applies the *Begay* similar-in-kind test." Appellee Suppl. Br. 18–19. Thompson contends that "*Johnson* ... does no such thing." Appellant Suppl. Reply Br. 6. Thompson further maintains that, notwithstanding *Johnson*, two completely different analyses guide the "degree-of-risk" inquiry and the *Begay* "similar-in-kind" inquiry. According to Thompson, a court looks to the *"ordinary case"* in determining if a predicate offense involves the same "degree of risk" as the enumerated offenses, but a court looks only to how a predicate offense *"may be committed"* in determining if it is "similar-in-kind" to the enumerated of-

---

**2.** The holding in *Johnson* that the ACCA residual clause was unconstitutionally vague overruled numerous Supreme Court and lower court cases interpreting that clause, including *James* and *Begay*. But previous precedent interpreting the ACCA residual clause remains persuasive authority for our task here—interpreting the residual clause of § 4B1.2.

fenses. Appellee Suppl. Br. 6–10 (emphases added). Thompson insists that AISBI is not similar in kind to the enumerated offenses because it *may* be committed with culpable negligence.

We do not believe that *Johnson*, which addressed the *Begay* "similar-in-kind test" only in the course of discussing various failed approaches to interpreting the ACCA residual clause, "overruled" the portion of *Martin* that applies *Begay*. *Johnson* does, however, clarify that when considering whether a prior crime constitutes a crime of violence under the residual clause, courts must look to the ordinary case not only in assessing the "degree-of-risk" posed by the prior crime, but also in assessing whether that crime is "similar-in-kind" to the enumerated offenses.[3] *See* 135 S.Ct. at 2559.

In many cases, the statutory language will clearly indicate whether—in the ordinary case—an offense is "similar-in-kind" to the enumerated offenses. If a statute requires knowing or intentional conduct, "*Begay* provides no shelter." *United States v. Rodriguez*, 659 F.3d 117, 119 (1st Cir. 2011). By contrast, if a statute has a *mens rea* of "strict liability, negligence, or recklessness," then, most likely, the ordinary case does not involve purposeful conduct and so is not similar in kind to the enumerated offenses. *See Sykes v. United States*,

564 U.S. 1, 13, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011). But where a statute has no stated *mens rea* requirement, a court must look to how the statute is ordinarily applied and what the *mens rea* is in those cases. *See, e.g., United States v. Hart*, 674 F.3d 33, 43 (1st Cir. 2012) (holding that assault and battery with a deadly weapon qualified as a "violent felony" under ACCA even though a "conviction *may* rest on a recklessness theory" because "our analysis under the residual clause is explicitly, and necessarily, limited to the 'ordinary case' "). For as the *Johnson* Court explained, the *Begay* similar-in-kind analysis "did not (and could not) eliminate the need to imagine the kind of conduct *typically* involved in a crime." 135 S.Ct. at 2559 (emphasis added).

### III.

We now turn to the question of whether Thompson's prior North Carolina AISBI conviction qualifies as a crime of violence for purposes of the residual clause of § 4B1.2 under *both* the degree-of-risk test and the similar-in-kind test. *Martin*, 753 F.3d at 490.

To determine whether a prior state conviction constitutes a predicate crime of violence justifying an enhanced federal sentence, we follow the categorical approach.[4] *United States v. Seay*, 553 F.3d

---

**3.** As the Government acknowledges, this " 'ordinary case' approach is significantly different from the 'minimum culpable conduct' examined for the force clause." Appellee Suppl. Br. at 12 (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) and *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017)). In determining whether a prior state conviction necessarily requires "the use, attempted use, or threatened use of physical force," U.S.S.G. § 4B1.2(a)(1), courts focus on "the minimum conduct necessary for a violation" under state law. *Castillo v. Holder*, 776 F.3d 262, 267–68 (4th Cir. 2015).

**4.** A court can apply a modified categorical approach only if the prior state conviction rests on a statute that "contains divisible categories of proscribed conduct, at least one of which constitutes—by its elements—a violent felony." *United States v. Gomez*, 690 F.3d 194, 199 (4th Cir. 2012). Under the modified categorical approach, a court may examine a limited universe of documents relevant to the underlying conviction for the sole purpose of determining which part of the statute the defendant violated. *Id.* The predicate state statute at issue here, AISBI, includes no "divisible categories." *See* N.C. Gen. Stat. Ann. § 14–32.4(a).

732, 737 (4th Cir. 2009); *see also Taylor v. United States*, 495 U.S. 575, 600–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). This approach considers "how the law defines the offense," not "how an individual offender might have committed it on a particular occasion." *Begay*, 553 U.S. at 141, 128 S.Ct. 1581.

 Section 14–32.4(a), the North Carolina statute under which Thompson was previously convicted, defines AISBI as follows:

> Unless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts serious bodily injury is guilty of a Class F felony. "Serious bodily injury" is defined as bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

The Court of Appeals of North Carolina has explained that AISBI, as this statutory definition indicates, applies to "those assaults that are especially violent and result in the infliction of extremely serious injuries." *State v. Williams*, 150 N.C.App. 497, 563 S.E.2d 616, 619 (2002). Thus, AISBI clearly involves a degree of risk "roughly similar," *Begay*, 553 U.S. at 143, 128 S.Ct. 1581, or "comparable" to the risk of physical injury posed by the enumerated offenses in § 4B1.2, *James*, 550 U.S. at 203–04, 127 S.Ct. 1586. *See United States v. White*, 571 F.3d 365, 370 (4th Cir. 2009)

("A roughly similar 'degree of risk' means that the prior crime, like the enumerated offenses, creates an 'immediate, serious, and foreseeable physical risk that arises concurrently with the commission of the crime' itself." (alterations omitted)).

As we explained in *Martin*, however, our conclusion that AISBI has a comparable degree of risk as the enumerated offenses "does not end our inquiry." *Martin*, 753 F.3d at 492. Applying *Begay*'s similar-in-kind test post-*Johnson*, we ask whether AISBI, like the enumerated offenses, is "purposeful, violent, and aggressive" in the "ordinary case." Thompson argues that the "broadly sweeping nature of North Carolina's assault law makes it impossible to determine the ordinary [AISBI] case." Appellant Suppl. Reply Br. 16.

We cannot agree. The Government asserts that it has reviewed every North Carolina case mentioning AISBI, and not one of the 141 cases supports the notion that AISBI can be committed with anything less than actual intent. Appellee Suppl. Br. 15–16 n.6. *See, e.g., State v. Brown*, 177 N.C.App. 177, 628 S.E.2d 787 (2006); *State v. Shannon Williams*, 150 N.C.App. 497, 563 S.E.2d 616 (2002); *State v. Nathaniel Williams*, 154 N.C.App. 176, 571 S.E.2d 619 (2002). Thompson does not dispute this report.[5]

Thus, unlike the DUI statute in *Begay*, which "typically" did not involve "purposeful, violent, and aggressive" behavior, 553 U.S. at 145, 128 S.Ct. 1581, AISBI under North Carolina law "typically" does involve such conduct. Accordingly, Thompson's prior AISBI conviction constituted a crime of violence under the residual clause of the

---

**5.** Indeed, Thompson offers only a single unreported, clearly distinguishable civil case to support his contrary view. *See Mitchum v. Gaskill*, 172 N.C.App. 171, 616 S.E.2d 29, 2005 WL 1804798, at *9 (2005) (unpublished)

(concluding that there was "no error in the trial court's judgment" finding Gaskill liable for negligent conduct arising from the same facts as his AISBI guilty plea).

applicable guideline, U.S.S.G. § 4B1.2 (2015).

### IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*