**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4618

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TOMONTA SIMMONS,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:14-cr-00017-RJC-13)

Argued:  December 13, 2018                                Decided:  March 4, 2019

Before GREGORY, Chief Judge, DUNCAN, and DIAZ, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Gregory authored the opinion, in which Judge Duncan and Judge Diaz joined.  Judge Duncan wrote a concurring opinion.

**ARGUED:**  Randolph Marshall Lee, Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

GREGORY, Chief Judge:

Appellant Tomonta Simmons had his supervised release revoked and was sentenced to 36 months' imprisonment after the district court determined that he committed the North Carolina offense of assault with a deadly weapon on a government official ("AWDWOGO") and four other violations of his release. Simmons's revocation sentence was predicated on the district court's determination that AWDWOGO is a "crime of violence" under the 2016 Sentencing Guidelines and, thus, a Grade A supervised release violation. Because we conclude that AWDWOGO is categorically not a "crime of violence," we find that the district court erred in classifying Simmons's supervised release violations as a Grade A violation. This error anchored Simmons's revocation sentence to an improperly calculated Guidelines range. Therefore, we vacate his revocation sentence and remand for resentencing.

I.

After a high-speed car chase on February 12, 2017 by North Carolina State Highway Patrol Trooper Gary Altman, during which Trooper Altman's police vehicle was sideswiped, Tomonta Simmons and another male were arrested. At the time, Simmons was on supervised release after having served a term of federal imprisonment for conspiracy to commit bank fraud. One of the conditions of his supervised release was that he "not commit another federal, state, or local crime."

After the February 12 incident, the United States Probation Office petitioned the United States District Court for the Western District of North Carolina for revocation of

2

Simmons's supervised release. According to the Probation Office, Simmons had committed various supervised release violations. The most serious violation was the crime of AWDWOGO, N.C. Gen. Stat. § 14–34.2, which, Probation argued, Simmons committed while fleeing from Trooper Altman.

At a revocation hearing, Simmons argued that he had been a passenger, not the driver of the car involved in the alleged assault. The district court heard testimony from Trooper Altman and from Simmons's mother and godmother. The court determined that Simmons was in fact driving the vehicle that sideswiped Trooper Altman's vehicle and that the Government had proven each of the alleged supervised release violations.

Of relevance to this appeal, the district court found that Simmons had committed a Grade A supervised release violation when he committed North Carolina AWDWOGO. *See* U.S.S.G. § 7B1.1(a) (classifying supervised release violations into Grades A, B, and C). The district court revoked Simmons's supervised release. *See* U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). With Simmons's criminal history category of V, the applicable Guidelines range for Simmons's revocation sentence was 30 to 36 months. *See* U.S.S.G. § 7B1.4(a)(1); U.S.S.G. § 7B1.4(b)(1); 18 U.S.C. §§ 1344, 1349, 3559(a)(2), 3583(e)(3). The district court sentenced Simmons to the top of that range: 36 months' imprisonment.

Simmons's counsel initially filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that he was unable to present a meritorious argument on appeal because none of the evidence submitted during the revocation hearing

3

contradicted Trooper Altman's testimony that Simmons was driving the vehicle at the time of the police chase.[1] Fulfilling our obligation under *Anders*, we reviewed the record and identified one nonfrivolous issue on appeal: whether the North Carolina offense of AWDWOGO is a "crime of violence" under the 2016 Sentencing Guidelines such that it constituted a Grade A violation of Simmons's supervised release.

Counsel for Simmons and the Government submitted supplemental briefing on this narrow issue. We now conclude that North Carolina AWDWOGO does not meet the definition of a "crime of violence" for purposes of U.S.S.G. § 7B1.1.

II.

Generally, we review de novo the issue of whether a predicate offense constitutes a "crime of violence" under the Sentencing Guidelines. *United States v. Carthorne*, 726 F.3d 503, 509 (4th Cir. 2013); *United States v. Jenkins*, 631 F.3d 680, 682 (4th Cir. 2011). However, when, as here, a defendant fails to object below to the district court's determination that his predicate offense is a "crime of violence," we review the question for plain error. *Carthorne*, 726 F.3d at 509. We will find plain error "if the settled law of

---

[1] *Anders* instructs that, if appointed counsel deems a criminal appeal to be "wholly frivolous," he or she should so advise the court and request permission to withdraw. 386 U.S. at 744. Such a request must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* The burden then shifts to the court to determine, "after a full examination of all the proceedings," whether an appeal would in fact be "wholly frivolous." *Id.* If the court agrees with counsel, it may grant counsel's request to withdraw. *Id.* If, however, the court determines that there exist nonfrivolous arguments, it must grant the defendant assistance of counsel to argue the appeal. *Id.*

4

the Supreme Court or this circuit establishes that an error has occurred." *United States v. Ramirez-Castillo*, 748 F.3d 205, 215 (4th Cir. 2014).

III.

A.

As we alluded to earlier, the Sentencing Guidelines classify supervised release violations into three categories: Grades A, B, and C. U.S.S.G. § 7B1.1(a). A Grade A violation, as relevant here, involves "conduct constituting [ ] a federal, state, or local offense punishable by a term of imprisonment exceeding one year that [ ] is a crime of violence." *Id.* § 7B1.1(a)(1)(A)(i). The Guidelines define "crime of violence" as any federal or state offense punishable by imprisonment for a term exceeding one year that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause) or "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)" (the enumerated offenses clause). U.S.S.G. § 4B1.2(a); U.S.S.G. § 7B1.1 cmt. n.2.

To determine whether North Carolina AWDWOGO is a "crime of violence" under the Sentencing Guidelines, we apply the familiar categorial approach. Under this approach, if the offense "can be committed without satisfying the definition of 'crime of violence,' then it is overbroad and not a categorical match." *United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017) (citing *Taylor v. United States*, 495 U.S. 575, 602

5

(1990)). In considering whether North Carolina AWDWOGO satisfies the definition of "crime of violence," we look only to the elements of AWDWOGO and not the particular facts of Simmons's case. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

North Carolina's statute provides in relevant part that "any person who commits an assault with a firearm or any other deadly weapon upon an officer or employee of the State or of any political subdivision of the State, . . . in the performance of his duties shall be guilty of a Class F felony." N.C. Gen. Stat. § 14–34.2. Thus, an individual is guilty of AWDWOGO under North Carolina law if he (1) commits an assault; (2) with a firearm or deadly weapon; (3) on a government official; (4) who is performing a duty of his or her office. *State v. Spellman*, 605 S.E.2d 696, 701 (N.C. Ct. App. 2004), *appeal dismissed*, 611 S.E.2d 845 (N.C. 2005).[2]

Simmons does not dispute that the vehicle he drove qualifies as a deadly weapon. *See State v. Jones*, 538 S.E.2d 917, 922 (N.C. 2000) ("It is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner." (citation omitted)). Rather, Simmons argues that his assault on Trooper Altman cannot be a "crime of violence" under the Guidelines because the offense may be committed with a mens rea lesser than that required by the Guidelines. The Government disagrees and argues that the offense satisfies both the enumerated offenses clause and the force clause. Because Simmons's crime constitutes a Grade A supervised release

---

[2] A conviction of AWDWOGO is punishable by a prison sentence exceeding one year and thus satisfies the minimum punishment requirement of U.S.S.G. § 4B1.2(a). N.C. Gen. Stat. § 14–34.2; N.C. Gen. Stat. § 15A–1340.17(c).

violation if it satisfies either clause of the "crime of violence" definition, we examine both.

1.

*Enumerated Offenses Clause*

In applying the categorial approach to determine if an offense falls within the scope of the enumerated offenses clause, we follow a "well-established procedure." *United States v. McCollum*, 885 F.3d 300, 304 (4th Cir. 2018). First, we must determine the "'generic, contemporary meaning' of the crime, which will typically correspond to the 'sense in which the term is now used in the criminal code of most states.'" *Id.* (quoting *Taylor*, 495 U.S. at 598). The generic definition may be gleaned from the Model Penal Code, modern criminal law textbooks, or from a survey of the states' definitions of the crime. *See Taylor*, 495 U.S. at 598 n.8; *United States v. Barcenas-Yanez*, 826 F.3d 752, 756 (4th Cir. 2016); *United States v. Alfaro*, 835 F.3d 470, 474 (4th Cir. 2016).

After the generic definition is identified, we must decide whether the elements of the prior conviction, AWDWOGO, categorically match the elements of the generic offense. *United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011). We will find a categorical match if the least culpable conduct punished by the state criminal statute falls within the scope of the generic offense. *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012). In conducting this comparison, we "look[ ] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Peterson*, 629 F.3d at 436 (brackets in original) (quoting *Taylor*, 495 U.S. at 600). "We rely on

7

precedents addressing whether [North Carolina AWDWOGO] is a crime of violence under the Guidelines interchangeably with precedents evaluating whether [the] offense constitutes a violent felony under the Armed Career Criminal Act (ACCA)," as "crime of violence" is "defined in a substantively identical manner" under both. *Carthorne*, 726 F.3d at 511 n.6 (internal quotation marks omitted) (quoting *King*, 673 F.3d at 279 n.3).

a.

*Generic Aggravated Assault*

The Government argues that North Carolina AWDWOGO categorically matches the generic enumerated offense of aggravated assault. *See* U.S.S.G. § 4B1.2(a)(2). Because the requisite mens rea under the AWDWOGO statute is broader than the enumerated offense, we disagree.

The Model Penal Code provides that a person is guilty of aggravated assault if he

(a) attempts to cause serious bodily injury to another, or causes such injury *purposely, knowingly or recklessly* under circumstances manifesting extreme indifference to the value of human life; or

(b) attempts to cause or *purposely or knowingly* causes bodily injury to another with a deadly weapon.

Model Penal Code § 211.1(2) (emphases added). Thus, under the Model Penal Code's definition, the required mens rea is no less than recklessness manifesting extreme indifference to the value of human life. The Model Penal Code defines recklessness as a "conscious[ ] disregard[ ]" of a "substantial and unjustifiable risk that the material element exists or will result from [the person's] conduct." *Id.* § 2.02(2)(c).

8

By contrast, as we have recognized in the past, "a substantial majority of U.S. jurisdictions require *more* than extreme indifference recklessness to commit aggravated assault." *Barcenas-Yanez*, 826 F.3d at 756 (emphasis added) (quoting *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1086 (9th Cir. 2015)). Indeed, we have determined that the "inclusion of a mere reckless state of mind" in a state aggravated assault statute "renders the statute broader than the generic offense." *Id.* (citation omitted). Therefore, if North Carolina AWDWOGO can be committed with a mens rea equal to or less than recklessness, the crime is categorically broader than the generic offense of aggravated assault and cannot be deemed a "crime of violence" under the Sentencing Guidelines. *See Garcia-Jimenez*, 807 F.3d at 1086 (noting that Model Penal Code includes a mens rea of recklessness in its definition of aggravated assault but explaining that "the Model Penal Code, while a helpful tool in the categorical analysis, does not dictate the federal generic definition of a crime").

North Carolina's AWDWOGO statute does not define "assault" and is silent on the requisite mens rea. Instead, the element of assault and the requisite mens rea are established by common law. *State v. Mitchell*, 592 S.E.2d 543, 547 (N.C. 2004) ("There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules." (citation omitted)); *United States v. Vinson*, 805 F.3d 120, 123 (4th Cir. 2015) (noting that there is no statutory definition of assault in North Carolina).

Three state common-law definitions of assault have developed. First, an assault is committed by "an overt act or an attempt, or the unequivocal appearance of an attempt,

9

with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm" (the "attempted battery" formulation). *Vinson*, 805 F.3d at 124 (quoting *State v. Roberts*, 155 S.E.2d 303, 305 (N.C. 1967)). Second, an assault is committed by "a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed" (the "show of violence" formulation). *Id.* (quoting *Roberts*, 155 S.E.2d at 305). And third, "an assault conviction may be premised on proof of battery" (the "completed battery" formulation). *Id.* (citing *In re K.C.*, 742 S.E.2d 239, 243 (N.C. 2013)).

Under any of the three formulations, an assault conviction will be sustained only if the defendant acts intentionally.[3] *See State v. Starr*, 703 S.E.2d 876, 880 (N.C. 2011), *aff'd as modified*, 718 S.E.2d 362, 366 (N.C. 2011); *State v. Britt*, 154 S.E.2d 519, 521 (N.C. 1967); *Vinson*, 805 F.3d at 125. This intent to act "can be established through proof of 'culpable negligence.'" *Vinson*, 805 F.3d at 126 (quoting *Jones*, 538 S.E.2d at

---

[3] Whether the various formulations of assault render N.C. Gen. Stat. § 14–34.2 divisible, such that the modified categorial approach applies, is a question that we have not yet answered. *See Vinson*, 805 F.3d at 124–25 (noting various forms of assault under North Carolina law but declining to consider divisibility); *Omargharib v. Holder*, 775 F.3d 192, 197 (4th Cir. 2014) (explaining that modified categorical approach applies where the predicate crime "consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not" (internal citation and quotation marks omitted)). However, because the mens rea required by each of the three formulations is the same, and our evaluation of the requisite mens rea is dispositive, we need not decide the divisibility issue here.

923). "Culpable negligence" is "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Jones*, 538 S.E.2d at 923 (citation omitted). As we explained in *Peterson* and reiterated in *Vinson*, culpable negligence's "focus on *thoughtless* disregard" renders it "a lesser standard of culpability than recklessness, which requires at least 'a *conscious* disregard of the risk.'" *Vinson*, 805 F.3d at 126; *Peterson*, 629 F.3d at 437.

The Government nonetheless argues that "no realistic probability exists that North Carolina would apply [AWDWOGO] to conduct that was not purposeful or knowing." Gov't Br. 13. This is because, the Government explains, the "ordinary or typical case involves purposeful conduct." *Id.* at 8. In making this argument, the Government relies on our unpublished opinion in *United States v. Merchant*, 731 F. App'x 204 (4th Cir. 2018).

*Merchant*, however, is inapposite. There, we found that North Carolina AWDWOGO is a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a) of the 2015 Sentencing Guidelines. *Merchant*, 731 F. App'x at 208. Under the residual clause, our inquiry was whether AWDWOGO categorically was "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2015). In making that determination, we applied a two-prong test: (1) AWDWOGO must have posed a "similar risk of physical injury to the crimes enumerated in [U.S.S.G.] § 4B1.2(a)"; and (2) AWDWOGO must have been "similar in kind" to the enumerated offense of aggravated assault. *Merchant*, 731 F. App'x at 206

11

(citations omitted). The similar-in-risk and similar-in-kind test relies on a review of the "ordinary case." *United States v. Thompson*, 874 F.3d 412, 415–16 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1179 (2018).

That test does not apply, however, to our analysis under the enumerated offenses and force clauses. Instead, we ask whether "the offense's full range of proscribed conduct, including the *least culpable proscribed conduct*," falls within the conduct proscribed by the generic enumerated crime. *King*, 673 F.3d at 278 (emphasis added) (citing *United States v. Chacon*, 533 F.3d 250, 254–55 (4th Cir. 2008)); *United States v. Townsend*, 886 F.3d 441, 445 (4th Cir. 2018) (evaluating "minimum conduct necessary to obtain a conviction under the statute" in force clause analysis); *Alfaro*, 835 F.3d at 478–79 (evaluating least culpable conduct in enumerated-offenses-clause analysis).[4] The "minimum culpable conduct" test is "significantly different" from the "ordinary case" approach. *Thompson*, 874 F.3d at 416 n.3. Moreover, the Sentencing Commission eliminated the residual clause—to which the "ordinary case" approach is relevant—when it drafted the 2016 Sentencing Guidelines that apply to Simmons's revocation sentence. *Compare* U.S.S.G. § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2015), *with* U.S.S.G. § 4B1.2(a) (U.S. Sentencing Comm'n 2016).

Consequently, our analysis under the enumerated offenses clause focuses only on whether the least culpable conduct under the North Carolina statute—conduct that would

---

[4] The Government has previously acknowledged the difference between the "ordinary case" approach applicable to a residual clause analysis and the "minimum culpable conduct" approach applied to a force clause analysis. *Thompson*, 874 F.3d at 416 n.3.

result in a conviction for AWDWOGO—is also proscribed by the generic offense of aggravated assault. *Alfaro*, 835 F.3d at 478. We rely on decisions of the Supreme Court of North Carolina, while decisions of the state's intermediate appellate court "constitute the next best indicia of what state law is." *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (citation omitted). As discussed, the Supreme Court of North Carolina has made clear that the element of assault can be satisfied with a mens rea of "culpable negligence." *Jones*, 538 S.E.2d at 923.

We recognize that in addressing convictions under the AWDWOGO statute, the North Carolina state courts have not made explicit findings that the acts at issue were culpably negligent, rather than something more. Nonetheless, it is plausible that North Carolina would punish culpably negligent conduct under the AWDWOGO statute. *See Townsend*, 886 F.3d at 445 ("We look to the minimum conduct necessary to obtain conviction under the statute and assure ourselves that there is a realistic probability . . . that a state would actually punish that conduct." (internal quotation marks omitted)). One plausible example of an AWDWOGO prosecution for a culpably negligent act would be a person who strikes a government official with a car. *Cf. Jones*, 538 S.E.2d at 923. The driver could meet the mens rea standard if he drove with thoughtless disregard for the safety of others. Therefore, we are satisfied that the North Carolina AWDWOGO statute punishes conduct that is broader in scope than that punished by generic aggravated assault. It thus fails the enumerated-offenses-clause test for a "crime of violence."

2.

*Force Clause*

For largely the same reason that North Carolina AWDWOGO fails to satisfy the definition of "crime of violence" under the enumerated offenses clause, it also fails to satisfy the definition under the force clause. An offense is a "crime of violence" under the force clause if it has as an element the "use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). As we highlighted in *Vinson*, the Supreme Court has held that "'negligent or merely accidental conduct' does not constitute a *use* of physical force." 805 F.3d at 125 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)). And because the requisite intent for any of the different forms of North Carolina assault can be established through proof of "culpable negligence," *Jones*, 538 S.E.2d at 923, each form of assault "permits conviction for conduct that does not amount to a 'use' of force under *Leocal*." *Vinson*, 805 F.3d at 126; *see also Peterson*, 629 F.3d at 437.

We reach this conclusion notwithstanding the Supreme Court's decision in *Voisine v. United States*, a decision which postdated our holding in *Vinson*. In *Voisine*—a case which concerned "misdemeanor crimes of domestic violence"—the Supreme Court distinguished between "volitional" and nonvolitional acts, instead of between the traditional categories of mens rea. 136 S. Ct. 2272, 2278–79 (2016). *Voisine*, however, addressed only reckless crimes, whereas AWDWOGO can be committed with culpable negligence—a mens rea of lesser degree than recklessness. *Id.* at 2280 ("Congress's definition of a 'misdemeanor crime of violence' contains no exclusion for convictions

14

based on reckless behavior. A person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally." (brackets in original)). And the Court expressly declined to extend its holding to "crimes of violence." *Id.* at 2280 n.4. Accordingly, we see no reason in light of *Voisine* to alter our conclusion in this case that North Carolina AWDWOGO—a crime that can be committed with culpable negligence—is categorically disqualified as a "crime of violence" under the Sentencing Guidelines.[5]

## B.

### *Plain Error*

The Government argues that, even if the district court erred in finding that AWDWOGO is a crime of violence for purposes of the Sentencing Guidelines, that error was not plain because the law in this area was unsettled at the time Simmons's revocation sentence was imposed. Simmons's sentence was imposed in September 2017. Yet our

---

[5] The Government asserts that the legislative purpose of the AWDWOGO statute supports its contention that the offense requires a mens rea greater than recklessness. The Government points specifically to a statement by the North Carolina Supreme Court that the purpose of the AWDWOGO statute is "to give greater protection to the law enforcement officer by prescribing a greater punishment for one who *knowingly assaults* such an officer." *State v. Avery*, 337 S.E.2d 786, 803 (N.C. 1985) (emphasis added). According to the Government, this legislative intent demonstrates that no real probability exists that North Carolina would apply AWDWOGO to "unknowing or unintentional conduct." Gov't Br. 10. In *Avery*, though, the question to be answered by the court was whether knowledge that the victim of an assault is a law enforcement officer is an essential element of AWDWOGO. 337 S.E.2d at 803. The court was not faced with deciding, nor did it speak to, the mens rea required for the assault itself. Because the court remained silent on the mens rea element of the assault, we do not agree that *Avery* supports the proposition that an individual must knowingly commit an assault to be found guilty of AWDWOGO.

15

decision in *Vinson*—holding that the mens rea for any of the three assault formulations under North Carolina law includes "culpable negligence" and is categorically broader than the force clause—was issued in November 2015, nearly two years prior to Simmons's sentencing. 805 F.3d at 126. To be sure, we had not yet determined that this particular assault offense is not a "crime of violence" under the 2016 Sentencing Guidelines. Nonetheless, *Vinson* provided a clear answer to the question that the district court faced: whether the mens rea required to commit North Carolina AWDWOGO was a categorical match to either the mens rea required by the generic offense of aggravated assault or the mens rea required under the force clause. In light of our clear holding in *Vinson*, we find that the district court plainly erred in determining that North Carolina AWDWOGO is a "crime of violence" for purposes of the Sentencing Guidelines.

The district court's error led to the improper calculation of the applicable Guidelines range. Simmons's AWDWOGO offense was the only Grade A supervised release violation found by the district court; the others were Grade B and Grade C violations. Absent the court's error, Simmons's supervised release violations together would have classified as a Grade B violation. U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). Therefore, the district court erred in finding Simmons committed a Grade A violation.

The Guidelines range for a Grade B violation with Simmons's criminal history category of V is 18 to 24 months, lower than the range of 30 to 36 months to which the

revocation sentence was anchored. U.S.S.G. § 7B1.4(a). Accordingly, we vacate Simmons's revocation sentence and remand for resentencing. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018) (noting that a guidelines miscalculation "ordinarily" justifies resentencing under the correct guidelines range); *United States v. Abu Ali*, 528 F.3d 210, 260 (4th Cir. 2008) ("A sentence based on an improperly calculated guidelines range will be found unreasonable and vacated.").

IV.

For the foregoing reasons, we vacate Simmons's revocation sentence and remand for resentencing.

*VACATED AND REMANDED*

DUNCAN, Circuit Judge, concurring:

I concur in the majority opinion because I agree that the district court plainly erred in concluding that AWDWOGO is categorically a crime of violence and accordingly that the proper disposition of this case is to vacate the district court's judgment and remand for further proceedings. I believe our precedent compels such a conclusion with respect to AWDWOGO under either U.S.S.G. § 4B1.2(a)'s enumerated offense clause or use-of-force clause, no matter how counter-intuitive it may seem. Although this is a difficult case, I ultimately conclude that the majority is correct and write separately to explain why.

Beginning with the enumerated offense clause, the majority opinion correctly explains that we first identify which of the listed crimes in the enumerated offense clause "most closely approximates the prior state crime"--here, aggravated assault. *United States v. Perez-Perez*, 737 F.3d 950, 952 (4th Cir. 2013). We then apply the categorical approach, comparing the elements of the generic offense of aggravated assault to the state offense, AWDWOGO, to determine whether the state offense criminalizes more conduct. *Id.* Because the Guidelines do not define aggravated assault, we look to the states to determine its generic definition. As we have concluded, the generic offense of aggravated assault requires a mens rea that is greater than recklessness. *See United States v. Barcenas-Yanez*, 826 F.3d 752, 756 (4th Cir. 2016); *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1086 & n.7 (9th Cir. 2015) (surveying state statutes and finding that seventeen states and the Model Penal Code do not punish aggravated assault committed with a mens rea of extreme indifference recklessness or less).

18

The AWDWOGO statute does not specify a mens rea requirement.  *See* N.C. Gen. Stat. § 14–34.2.  However, we and North Carolina courts have held that assault in North Carolina, which is a necessary element of AWDWOGO, is satisfied where the defendant acts with a mens rea of culpable or criminal negligence.  *See United States v. Vinson*, 805 F.3d 120, 126 (4th Cir. 2015) (explaining that North Carolina law permits convictions for assault with proof of culpable negligence).  North Carolina courts have explained that while assault requires intent as an element, such intent may be *implied* from culpable or criminal negligence.  *State v. Spellman*, 605 S.E.2d 696, 703 (N.C. Ct. App. 2004).  Thus, so long as there is sufficient evidence to convict a defendant of acting with culpable negligence, North Carolina courts have found that this may constitute sufficient evidence of assault under this statute.  By so holding, North Carolina effectively collapses culpable or criminal negligence with intent for the purposes of assault.  In North Carolina, a defendant acts with culpable negligence when he evinces "thoughtless disregard of consequences or a heedless indifference to the safety and rights of others."  *State v. Jones*, 538 S.E.2d 917, 923 (N.C. 2000) (internal quotation marks omitted).

Comparing the mens rea requirements of the generic definition of aggravated assault with those of AWDWOGO, we have held that North Carolina culpable negligence, defined as "thoughtless disregard," is a less demanding standard and therefore not a categorical match with recklessness under the Model Penal Code, which is defined as "conscious disregard."  *See United States v. Peterson*, 629 F.3d 432, 437 (4th Cir. 2011).  It therefore seems to follow that North Carolina AWDWOGO criminalizes a broader scope of conduct than § 4B1.2(a)'s enumerated offense clause.

The government's argument to the contrary--that there is no realistic probability that North Carolina would apply the offense to conduct that is not committed recklessly-- is unavailing. The realistic probability requirement is satisfied here because North Carolina courts have held that a necessary element of AWDWOGO, assault, can be committed with a mens rea that sweeps more broadly than that required under the generic definition. *See United States v. Covington*, 880 F.3d 129, 135 (4th Cir. 2018) (explaining that the realistic probability requirement can be satisfied by pointing to the statutory text or to actual cases). In *United States v. Carthorne*, 726 F.3d 503, 511 (4th Cir. 2013), we held that Virginia assault and battery on a police officer ("ABPO") was not a crime of violence under § 4B1.2(a)(2)'s residual clause. This is because common law assault and battery, which was a necessary element of Virginia ABPO, could be satisfied by the slightest touching, which is less than the level of force required under the residual clause--"a serious potential risk of injury to another." *Carthorne*, 726 F.3d at 514. In so holding, we did not discuss any specific cases in which a defendant had been punished under ABPO while engaging in such conduct, emphasizing instead that the "key to the categorical approach is elements, not facts." *Id.* (internal quotation marks omitted). The principles underlying *Carthorne* apply here: even though Simmons has not pointed to a specific case in which a defendant was punished for AWDWOGO with a mens rea of culpable negligence, it suffices that we and North Carolina courts have unambiguously held that a necessary element of AWDWOGO, assault, sweeps more broadly than § 4B1.2.

Moreover, one can readily conceive of cases in which a defendant could be convicted of AWDWOGO where the defendant acts with a mens rea of culpable negligence. For instance, a defendant could hit a police officer with his truck, as was the case in *State v. Spellman*, 605 S.E.2d 696 (N.C. Ct. App. 2004), and so long as he operated the truck with thoughtless disregard, his intent--as required for an assault conviction--could be implied. *See id.* at 703 ("Intent may be *implied* from *culpable or criminal negligence . . .* if the injury or apprehension thereof is the direct result of intentional acts done under circumstances showing a reckless disregard for the safety of others and a willingness to inflict injury.") (emphasis added).

For the reasons set forth above, I am compelled to agree with the majority that AWDWOGO is not categorically a crime of violence under either the enumerated offense clause or the use-of-force clause. Our precedent seems, to me, to lead inexorably to that result.